SOUTH MEMPHIS LAND CO. v. CITY OF MEMPHIS.—74 S. W. (2d) 209.

Western Section. September 28, 1932.

Petition for Certiorari Overruled by Supreme Court, February 11, 1933.

K. D. McKellar and Bates, Shea & Frazer, all of Memphis, for appellant.

Walter Chandler and Abe D. Waldauer, both of Memphis, for appellee.

HEISKELL, J. We will adopt the statement of the case substantially as set out in the brief of the complainant.

This cause is one brought by the South Memphis Land Company, a corporation, to recover from the city of Memphis the value of certain sewers, which the bill alleges and charges were wrongfully appropriated and converted to the use of the city of Memphis, together with interest on such value since said conversion and appropriation.

The bill recites that the complainant is a corporation, owning a large tract of land in the southern part of the city of Memphis, according to the boundaries of the city, as fixed by chapter 396 of the Private Acts of the General Assembly of the State of Tennessee, for the year 1929, and other lands contiguous thereto and south of the boundaries of the city of Memphis, so fixed by the 1929 act.

The bill alleges that many years ago the complainant, for the purpose of developing its said property, undertook and started a settlement thereon, known as "New South Memphis," wherein it secured the establishment of a large number of industrial plants, and wherein was built a large number of houses; that the complainant opened up subdivisions known as "Westside," "Southside Highland," "Hernando Terrace," "Longview Heights," "First Addition to Longview Heights," and "Second Addition to Longview Heights," and in said subdivisions sold a great many lots and secured the building thereon of a great many houses.

The bill further alleges that, with the developments aforementioned, it became necessary for the residents and occupants to have both water and sewer connections and facilities. That the complainant made a contract with the Memphis Artesian Water Company, at that time a private corporation, by which it secured water for the residents of said territories, but that it was not able to make a contract with the defendant, city of Memphis, to secure sewerage.

That, as a result of said failure to contract with the said city of Memphis, at great cost and expense to itself, complainant constructed, a number of years prior to said property being annexed to the city of Memphis, but inside the limits of said city of Memphis, as fixed by said Private Act of 1929, a total of 35,617 lineal feet of 6-inch

sewers; 4,877 lineal feet of 8-inch sewers; 182 feet of 10-inch sewers; and 52 manholes. Plats of said sewer lines are attached as exhibits to the original bill, and are shown on the transcript at page 12.

That, in addition to said sewers above mentioned, all of which are now in the city limits, as defined by said private act, it also owns connecting sewers essentially a part of said sewerage system south of the city, which said connecting sewers are described in the original bill.

The complainant avers that, according to the provisions of the private act above mentioned, the boundaries of the city of Memphis on the 1st day of November, 1929, were extended to Mallory avenue on the south, cutting complainant's property, wherein said sewers were built, almost in half; that as a result thereof, all of the property of the complainant north of Mallory avenue, comprising as its greatest part 1,075 acres of woodland, and land used for farming purposes, was assessed by the defendant for city taxes in amounts aggregating hundreds of thousands of dollars, calling for the payment of many thousands of dollars for city taxes, for which the complainant receives no benefit whatsoever.

The bill further alleges that on or about the 1st day of November, 1929, the date upon which said private act became effective, the defendant wrongfully took control and possession of, and took over the management and control of, complainant's sewers described in said bill, comprising in part the sewer system of the complainant, holding and using them as its own, and excluding the complainant from the possession and enjoyment of said sewer system.

It is set forth in the bill that the said sewers and sewer system wrongfully appropriated and converted by the defendant, city of Memphis, had been a source of profit to the complainant, in that prior to November 1, 1929, it received sewer rental and other income as a result of its ownership of said sewers. That the cost of said sewers owned by it, and within the limits of the city of Memphis, as set forth in said private act, was the sum of about $50,000.

Complainant further avers that the sewers described in said original bill, and the two connecting mains, were, and except for said conversion would yet be, the private personal property of the South Memphis Land Company, and that the same have been taken by the defendant and converted to its own use, to the great damage of the complainant, which, as a result of said wrongful taking and conversion, has received no compensation whatever.

To the original bill of the complainant, the defendant filed a demurrer, and set up (1) that the court was without jurisdiction to hear and determine the controversy between the parties; (2) that the original bill shows on its face that it is a suit to recover unliquidated damages, not arising out of or growing out of a breach of an oral or written contract, and for that reason the court is lacking in jurisdiction to hear and determine the issues involved.

This demurrer was by the court overruled, the court holding that the bill did not purport to invoke the aid of the chancery court in a case of tort, but sought relief upon the implied promise in contract of defendant to pay for the sewers alleged to have been converted by it. The demurrer was overruled, without prejudice to the right of the defendant to rely on, at the hearing, any principle of law available to it as a defense to the complainant's action. To the action of the court the defendant excepted.

The defendant answered, substantially denying the allegations of the complainant, except as to formal matters, such as corporate existence and extension of the city limits, as alleged in the bill under the provisions of private act of 1929. The answer demands proof of the ownership by the complainant of the lands set out in the original bill, and denies the ownership of complainant of the sewers and sewer system, as set out in the bill. The answer further denies the construction by the complainant of the said sewer lines, and denies the allegations as to the length, diameter, location, and sufficiency of the sewers, or that the complainant owned the connecting sewers set out in its bill.

The defendant neither admitted nor denied the collection of sewer rentals; denied that the sewer lines were worth $50,000, as of November 1, 1929, or were of any value, and further denied the right of the complainant to recover any sum whatsoever from the defendant by reason of the construction or existence of any sewers within the limits of the City of Memphis.

The defendant denied that it had done any wrongful act with respect to any of the sewers mentioned in the original bill; denied that it converted the same; or that it was excluding the complainant from rentals, or other benefits, which the complainant may have enjoyed.

The answer denied the city had power to enter into any contract, as alleged by the complainant; denied the defendant's authority or power to enter into any contract, except in the manner set forth in the Charter of the city of Memphis; denied the power of any court to impose an implied contract on the city; and reiterated the grounds of its demurrer to the effect that the court was without jurisdiction to try the issues sought to be presented by the complainant.

The answer further denied that the said sewers were the private personal property of the complainant, or that the same would be such, except for the alleged conversion by the defendant.

The bill was amended to allege that the city had no constitutional right to take the sewers set forth in the original bill, without paying for them, and that such taking was violative of Amendment 5 to the Constitution of the United States, and sections 8 and 21 of article 1 of the Constitution of the State of Tennessee.

The answer of the defendant was amended to aver that all acts done or performed by the city of Memphis in relation to the sewers described in complainant's bill, were pursuant to, and in accordance with, certain ordinances of the city of Memphis, designed for the protection of public health and safety, which ordinances were adopted by the city of Memphis in the exercise of the police power conferred upon it, and all of which ordinances the defendant undertakes to plead and rely upon, but does not set the same out in its answer.

The amendment to the answer further sets out that the streets and alleys in which the sewers have been laid in the subdivisions mentioned in complainant's bill were dedicated to the use of the public, prior to the date of the alleged taking of the sewers by the respondent, and that complainant is estopped by its acts to deny the complete dedication of all of the streets and alleys in said subdivisions to the public for the entire width, length, height, and depth of said streets and alleys.

The amendment to the answer further avers the denial of the city of the existence of any contract whatsoever between the complainant and the defendant, or that the defendant had the power to enter into, or be bound by, any implied contract. The defendant avers and charges in its amended answer that, if it should be held that an implied contract was made by the complainant and the defendant, such alleged contract, being oral in its nature, not in writing and not signed by the parties to be charged, is unenforceable under and by reason of the fourth section of the statute of frauds, which the city undertakes to plead.

The chancellor held that the city had not appropriated or converted to its own use the said sewer system, and dismissed the bill. Complainant has appealed.

The assignments of error are as follows:

"I.

"The court erred in failing to find and hold that the sewers and sewer system constructed by the complainant within the limits of the City of Memphis as fixed by chapter 396 of the Private Acts of the General Assembly of the State of Tennessee for the year 1929 were owned by the complainant prior to November 1, 1929.

"II.

"The court erred in finding and holding that the defendant, City of Memphis, did not convert and/or appropriate to its own use on or subsequent to November 1, 1929, the sewers and sewer system constructed by complainant within the limits of the City of Memphis, as fixed by chapter 396 of the Private Acts of the General Assembly of the State of Tennessee for the year 1929.

"III.

"The finding of the court that the defendant, City of Memphis, had not appropriated and/or converted to its own use said sewers

and sewer system is contrary to the weight and preponderance of the evidence.

"IV.

"The evidence preponderates against the finding of the court that the defendant, City of Memphis, had not appropriated and/or converted to its own use said sewers and sewer system of the complainant.

"V.

"The court erred in failing to find and hold that the defendant, City of Memphis, was bound and liable to pay to the complainants, South Memphis Land Company, the value of the sewers and sewer system within the limits of the City, as fixed by chapter 396 of the Private Acts of the General Assembly of the State of Tennessee for the year 1929.

"VI.

"The court erred in dismissing the original bill filed by the complainant.

"VII.

"The court erred in adjudging that the complainant and the surety should pay the costs of the cause."

It will be seen that these assignments can be reduced to two: (1) It was error not to hold that the sewers in question were owned by complainant prior to November 1, 1929. (2) The court erred in holding that the city did not convert or appropriate said sewers to its own use on or after November 1, 1929.

It is also evident that, unless the complainant can sustain the second assignment, the first becomes immaterial. If the city did not become liable by virtue of taking over or appropriating said sewer system, so far as this suit is concerned, it matters not who owned the sewers. We therefore take up the question presented by the second assignment, assuming for the present the ownership of complainant prior to November 1, 1929.

The facts involved in this question are not disputed, although counsel differ widely as to the legal effect and the conclusions to be drawn. The act extending the city limits was passed April, 1929, and took effect November 1, 1929. During this time conferences took place between representatives of the land company and the city; the complainant seeking to get the city to purchase the sewers. This the city declined and refused to do. Mr. Mallory says he notified the city that, if it took possession of the sewers, it would be expected to pay for them. He does not say how this notice was given, and nothing in writing is shown giving such notice. However, the city disclaims taking possession, and it is uncontroverted that the city had refused to pay for any sewers in any of the annexed territory taken in on November 1, 1929. Thus the matter stood when on December 12, 1929, Mr. Mallory received the following letter from Mr. Fowler, city engineer:

"December 12, 1929.
"South Memphis Land Company, Cotton Exchange Building, Memphis, Tennessee.
"Attention: Mr. B. L. Mallory.

"Dear Sir: In order that this department might be able to make connections to the sanitary sewers in the various subdivisions to the sanitary sewers in the various subdivisions of the South Memphis Land Company, it is going to be necessary that we have a plan of your sewers. You, undoubtedly will make applications for numbers, building permits, and sewer connections throughout this territory and unless we have your plan of subdivision and your plan of sewers, it will be impossible for us to grant these permits.

"I hope that you will let us have this promptly so that there will be no confusion or delays in securing your numbers and permits.

"This is very important and I hope that you will co-operate with us in this matter.

"Yours truly,

"City Engineer."

Mr. Mallory replied to this letter as follows:

"December 13, 1929.
"Mr. Wm. B. Fowler, City Engineer, Memphis, Tenn.

"Dear Sir: Answering your letter of yesterday reference to data on sewers of the South Memphis Land Company, South Memphis. As promised you by the writer some three weeks ago we instructed our engineer Mr. Mullens to get us up a blue print showing the different sewer lines on our three subdivisions in South Memphis. On account of business ahead of Mr. Mullens he did not execute this work as promptly as we had expected, however, we got the blue prints into our office two days prior to the receipt of your letter. Regret very much that we were unable to get this information to you earlier.

"We had a call from Mr. Maddox today in reference to our sewers in South Memphis, and we phoned his office to send over and get one of our blue prints, which as stated above had just been received in our office two days previously.

"The writer had expected to call on you in person with this blue print, but being pushed for time for the last few days has delayed doing so.

"We are sending Mr. Maddox two blue prints so that one may come into your office, and one remain with him.

"It will be a pleasure for the writer to co-operate with you in every way in reference to this matter, and feel assured we will receive the same co-operation from your department as we have in the past.

"Yours very truly,
"South Memphis Land Company,
"By B. L. Mallory, President."

Mr. Mallory says he considered the letter of Fowler as a taking over by the city of the sewer system, and counsel for complainant rely upon this letter as evidence of a conversion by the city. We do not think the letter admits of this construction. It speaks of the sewers as "yours" and says, "You will make applications for numbers, building permits, and sewer connections." Certainly requiring application for building permits would not be considered as a taking over of the lots of complainant by the city. Mr. Mallory speaks of the city requiring a permit in order that the company might rebuild a barn destroyed by fire, as if it showed an intention to take over the property of the company. It had not been used to this sort of supervision while outside of the city, but, when taken into the city, a building permit was required for any building. The city says the provision for permit for sewer connection was an exercise of its police powers regulatory in its nature, looking to sanitation and public health.

Nor do we consider that Mr. Mallory's reply indicates that he thought the city was taking over the sewers or making an implied contract to pay for them. We must bear in mind that the city had definitely refused to consider paying for the sewers. Mr. Fowler's letter cannot be construed as an intention on the part of the city to reverse this policy, and Mr. Mallory's reply does not indicate that he so understood it. He does not say anything about the city paying for the sewers or suggest any appointment to discuss this subject, and he does not make any objection to what the city is proposing to do, and from that time on the complainant company made no objection to what the city did. This is not all in the record bearing on this point. In 1914 the complainant company was granted permission to connect with the South Memphis sewer laid by the city, with this provision: "This right is given however, with the distinct understanding that plans for such connecting sewers must be filed with the City Engineer and approved by the City Engineer and the actual physical connection between your sewers and the city sewers be made by the city at your expense. It is given with the further understanding that all the rules governing sanitary sewers in the City of Memphis be carefully adhered to by you. . . ." At this time an ordinance was in force in the city providing as follows:

"That any person desiring to connect with a City sewer main, sub-main or lateral, shall first apply to the engineering department of the City of Memphis, and fill out the proper application blank for such connection. The application shall set out the point at which the connection is desired, the distance from the main to the property line of the applicant, or party for whom the work is to be done, and shall state whether the work is to be performed by private persons or is desired by the City forces, and each application shall be accompanied by the fees as hereinafter fixed, to-wit:

" 'If the work is done by the City . . . for each connection from the main to the property line is 100 feet or less, the fee shall be $12.50; and on thoroughfare paved with brick . . . the fee shall be $25.00, etc.

" 'Where the work is to be done by some person, firm or corporation; as an inspection fee for examining said work $5.00.' "

It appears from the record that the city grants permits to tap sewers only to licensed plumbers. There is no requirement that the city do the work, but it is claimed that experience has shown that it is more satisfactory for the city to make the connections through plumbers familiar with the work, and that property owners prefer to have the work done by the city at the fixed charge provided by the ordinance rather than to employ their own licensed plumber and then pay the $5 inspection fee to the city. Complainant insists that the city has forbidden it to tap its sewers. We do not think so. The city has merely applied the ordinance which was in force when the complainant company agreed to observe the rules governing sanitary sewers in the city. Perhaps the city might have enforced the regulations of the ordinance under this contract and have insisted on inspection before the annexation. But, however this may be, the city after the annexation did assume to make the rules and regulations as to the sewers of the complainant required by the ordinance. The city insists that this was a mere exercise of its police power to safeguard the public health, and, even if it lacked the power otherwise, it had it by virtue of the contract of 1914.

The complainant insists that it has been deprived of the right to make connections with the sewers. The city says, "Not so," that there is nothing to prevent the complainant or a lot owner from making a connection provided the ordinance is observed, as to permit and licensed plumbers. The complainant says the city has destroyed its right to collect $12.50 for a connection; again the city says "No." The city does not care for the work for which $12.50 is charged. There is no profit in it, and the city does the work because equipped to do it, and the property owners seem to prefer to have the city handle the work and thus avoid the inspection fee. The city says the complainant and property owners can make connections if they so desire. We do not understand that the complainant insists that there is or was any profit in the $12.50 for a connection, but it says before the annexation it charged a rental for use of sewers and that the city has destroyed this profit. It does not appear that the city has ever objected to complainant charging and collecting a rental, but that the complainant voluntarily abandoned all attempts to collect rentals at the time of the annexation. It appears somewhere in the record that the reason for this was that people could not be expected to pay rent for use of sewer and pay the same city taxes paid by others who had free use of city sewers. This would be assumed without proof, and it shows that, whatever profit complainant

received from sewer rentals, was destroyed by the annexation itself and not by any act of the city since the annexation. This cannot be considered as evidence going to show a conversion by the city. Counsel for complainant disclaim any contention that the annexation itself worked a conversion.

Then the land company claims that the city did work on the sewers, made repairs, and moved stoppage. The city admits this, but says the complainant made no objection to this, and, as it saved expense to complainant, the city had reason to believe it was satisfactory. The city further says it is willing for complainant to make all repairs and relieve all stoppage at its own expense under city inspection, if it prefers to do so.

We do not overlook the forceful presentation of complainant's contention that the city exercises the same control over these sewers as over those constructed by the city at its own expense, and that this necessarily means making them its own. In addition to what we have before us, however, the nature of sewers as property must be taken into consideration. They are not revenue producing. They bring no income. The only return they give is in the improvement of property and the health and comfort of the citizens. It is a most intangible kind of property. The complainant says, ''What more could the city do with these sewers if it had constructed them?'' On the other hand, the question arises, What less could the city do than it has done, and exercise police control over the sewers? The city says to the land company, ''If you prefer to make the connections under city inspection, you can do so. If you prefer to look after stoppages and repairs at your own expense, also under city supervision, you will be allowed to do it.'' The complainant has not been forbidden to make connections or control connections or to charge rental. It has not demanded the right to do all repairs and correct all stoppages at its own expense. The sewers have not been damaged, and the city proposes to let the complainant do what the city has been doing, provided it does it just as well as the city would do and subject to city inspection.

We start out in 1929 with the city refusing to purchase or pay for the sewers, and we wind up two years later with the city denying any intention to claim the sewers. Yet complainant says there was an implied contract to take over and become liable, or such a tort as carried the implication of intention to appropriate. We cannot find any such intention on the part of the city. If the city had done what it did without an express denial of willingness or intention to appropriate, it might make a different case. If you have a horse and your neighbor takes him out of your stable and uses him, that may be a conversion, but, if you send for your neighbor and try to sell the horse to him and he declines to buy, but says, ''The horse is an expense and no profit to you, I will feed him and exercise him for

you," and you know that he is doing this and make no objection, it is a very different case.

If it be admitted that the city went too far in its mere exercise of police power, yet what harm has been done, what injury has the complainant suffered? The only loss of revenue, if any, was caused by the annexation, not by what the city did afterwards; having the connections made directly by the city at cost, thus saving an inspection fee and having repairs made and stoppages corrected at expense of city instead of by the complainant at its expense and under city inspection, all this is more consistent with the belief on the part of the city officials that the complainant was consenting, as it did not object, than with the theory that the city had changed its intention in regard to becoming liable as purchaser of the sewers and concluded to become liable under an implied contract on a course of conduct which reasonable persons would know constituted a conversion. Giving full weight to the ably presented contentions of counsel for complainant, we cannot escape the conclusion that the uncontroverted facts fail to make out a case of conversion.

We think this makes it unnecessary to determine a great number and variety of questions presented by counsel. Counsel for complainant frankly concede that the complainant has no case if there has been no conversion by the city. Counsel for the city insist, and cite authority to support their contention, that mere annexation of new territory does not work a conversion of the sewers, and counsel for complainant say they make no such claim. Then counsel for the city say the streets were dedicated to the public and the dedication inured to the benefit of the city when the annexation took place and this is not denied. The city contends that the sewers being in public streets could not be the private property of the land company. This is, of course, contested by counsel for the complainant, and, if it were necessary to decide the question, the authorities cited for complainant, Oak Cliff Sewerage Co. v. Marsalis, 30 Tex. Civ. App., 42, 69 S. W., 176, and Memphis Gaslight Co. v. State, 6 Cold., 310, 98 Am. Dec., 452, make a strong case in support of its contention.

Again, the contention is made that the city could not be bound by an implied contract. If we had found that the city had contracted to purchase and pay for these sewers and had under such contract, no matter how informal, taken them as city property, we would have had no hesitation in holding the city bound under the doctrine laid down in Keenan & Wade v. Trenton, 130 Tenn., 71, 168 S. W., 1053, Ann. Cas., 1916B, 519, and other cases, that, where the city had power to make a purchase and attempted to do so, the mere invalidity in the method of exercising the power does not prevent the obligation to pay from attaching. Or, in other words, where the city takes benefits for which its council might well have contracted proceeding properly, it will not be heard to deny liability on the

ground that the contract was not properly executed. However, in the view we have taken of the case, it becomes, as we have said, unnecessary to decide any other question than that complainant has failed to make out a case of conversion. We can see how the owner of a sewer system in a district taken into the city might have a strong appeal in favor of compensation, but the right or duty of the city to purchase such a sewer system is like the right or duty to construct sewers in an unsewered territory, largely a matter within the discretion of the city authorities. Even if a suit could be brought to compel the city to purchase sewers on the ground that, if the district annexed were without sewers, the city would be bound and could be compelled to construct them, still this is no a suit for that purpose but a suit for conversion. The result is that the assignments of error must be overruled and the decree of the lower court dismissing the bill be affirmed. In view of the nature of the case we think the dismissal should be without prejudice as to any matter outside the actual decision herein. Complainant will pay costs of appeal.

Senter and Anderson, JJ., concur.