17700

DERBY HEIGHTS, INC., Respondent, v. GANTT WATER AND
SEWER DISTRICT, Appellant, and Eight other
cases against the same appellant
(116 S. E. (2d) 13)

*Messrs. E. P. Riley, E. P. Riley, Jr.,* and *R. W. Riley,* of Greenville, *for Appellant,*

*Messrs. Leatherwood, Walker, Todd & Mann,* of Greenville, *for Respondent,*

*Messrs. Wyche, Burgess & Wyche,* of Greenville, *for Amicus Curiae, being Woodfields, Inc.,*

*Messrs. E. P. Riley, E. P. Riley, Jr.,* and *R. W. Riley,* of Greenville, *for Appellant, in Reply.*

August 18, 1960.

LEGGE, Justice.

In nine actions, tried together, recovery of "just compensation" was sought against the defendant, Gantt Water &

Sewer District, a public corporation, for its alleged taking of water lines that the plaintiffs had installed to serve their respective properties. In seven of them the Master, finding that there had been a taking, recommended judgment for the plaintiffs with interest from August 1, 1958, the date of their demand for compensation. In two, he found that the plaintiffs' lines had not, at the time of the trial, been taken into the defendant's water distribution system; and as to them he recommended dismissal without prejudice. By order of December 9, 1959, the Honorable T. B. Greneker, Presiding Judge, rejected the Master's recommendation as to allowance of interest, but in all other respects confirmed his report and adopted the recommendations contained therein. From that order the defendant has appealed.

There is no issue here as to the amounts awarded in these cases. Actually, the appeal involves but two questions:

1. Had the respective plaintiffs dedicated their water lines to the public?

2. Was there a taking by the defendant?

By the Act of April 21, 1954 (48 Stat. at L. 2215), there was created a public corporation known as Gantt Water & Sewer District. The area of the district, as described in the Act, comprised a portion of Greenville County lying to the west of the City of Greenville and to the south of the Parker Water and Sewer Sub-District. The Act committed to the district "the functions of constructing, operating, maintaining, improving and extending a Water Distribution System, a sewer system, a system for the collection and disposition of garbage, and a system for fire protection" within its area; established a Commission to operate, manage and govern it; and prescribed its powers, which included that of eminent domain.

With the exception of Suela Hewins, all of the respondents owned and developed residential subdivisions, served by water lines constructed at their own expense under the streets of their respective subdivisions, which streets they

had laid out and conveyed to Greenville County. Water for these lines was obtained from the water system of the City of Greenville. Suela Hewins in 1955 installed at her own expense a private water line from the city's system to her residence in a subdivision known as Terry Court.

The area of Gantt Water & Sewer District included all of the properties before referred to. When Gantt began operation in 1955 it issued bonds and out of their proceeds it constructed certain water mains: but it proceeded to use respondents' lines for the servicing of their subdivisions; it required that all properties within the district use its water supply, which it obtained from the city's water system; and, pursuant to a contract between it and Greenville City Water Works, a surcharge of 331/3% was added to all water bills rendered to customers in the district, this surcharge being collected by the City Water Works for the account of Gantt. A tap fee was required for each consumer unit served, in the amount of $60.00, of which $18.00 went to Gantt and $42.00 ($35.00 for installation of the meter and $7.00 for the cost of making the tap) went to the City Water Works.

The testimony negates the idea that respondents either gave the water lines in question to Gantt or consented that it should, without cost, take them over. Appellant, so conceding, contends nevertheless that respondents had no property in them because; (1) by having laid them in streets that had been conveyed to Greenville County, respondents actually or by implication had dedicated them to public use; and (2) since the cost of them had been taken into consideration in fixing the prices of lots in their subdivisions, respondents had already been compensated for such cost by the purchasers of the lots.

Dedication is the intentional appropriation of land, or of an easement therein, for some proper public purpose. 16 Am. Jur., Dedication, Section 2; 26 C. J. S. Dedication § 1. It is not a unilateral transaction; for its completion there must be acceptance by the public, of the prop-

erty, for the particular purpose. In the absence of an express gift, one who asserts a dedication must show conduct on the part of the landowner clearly, convincingly and unequivocally indicating his intention to create right in the public to use the land, adversely to him, for such purpose. *Town of Estill v. Clarke,* 179 S. C. 359, 184 S. E. 89; *Shia v. Pendergrass,* 222 S. C. 342, 72 S. E. (2d) 699.

Construction of the water lines, like the laying out of streets, was an essential part of the development of the subdivisions. Conveyance of the streets to the county did not necessarily preclude respondents from laying water pipes below their surface, even though the deeds may have contained no express reservation of their right to do so. It is not suggested that Greenville County either was ignorant of or objected to such construction. Whether the deeds conveyed the street areas in fee or an easement in them for street purposes is not disclosed by the record before us; and in our view that matter is immaterial. If respondents had no right, without the county's consent, to construct their lines under those areas, the county, objecting, may have required their removal. *Cf. Cloverdale Homes v. Town of Cloverdale,* 182 Ala. 419, 62 So. 712, 47 L. R. A., N. S., 607. But that is beside the point; the issue here is whether their construction under the streets effected, as a matter of law, a dedication of the water lines to the public. There was testimony for the respondents that no gift of these lines was ever made or intended. And that they were recognized by Gantt as privately owned is evidenced by its chairman's letter of September 30, 1955 to Messrs. Huguenin & Douglas, the first paragraph of which reads as follows: "It is our understanding that you are the owner of Belle Meade-Derby Heights, a subdivision located within the area of our water and sewer district. We also understand that you own the private water line now serving your development." The evidence amply warranted the finding, by the two lower tribunals, that there had been no dedication of the water lines in question.

We find no merit in appellant's contention that since respondents, when they fixed the prices of lots in their subdivisions, had taken into consideration the cost of the water lines, they were compensated for such cost by the purchasers and therefore had no property in the water lines for which they could demand that appellant compensate them. The testimony for respondents, though not very specific on this point, warrants the conclusion that they expected, from the sale of lots, to recoup the cost of installing their water systems as well as the other expenses incident to the development of their subdivisions. But there is nothing in that or any other testimony in the record here to require the conclusion that they did not own these lines when appellant took them over as part of its water system. Respondents' ownership of course entailed responsibility toward the owners of lots in their subdivisions, for they were under duty to them to render an adequate supply of water available in the subdivisions; and since that water was delivered through respondents' lines, theirs was the duty to maintain them. But the water pipes were the property of the respondents. If they had taken them up and put down others instead, the lot owners could not have complained so long as an adequate supply of water was rendered available to them. If they had taken them up and not replaced them, respondents would have breached an obligation to their lot owners, but none to appellant. The evidence is convincing that regardless of the fact that the prices of their lots were higher than they would have been if water had not been made available to the purchasers, respondents were the owners of their water lines when they were taken over by the appellant. The amount of "just compensation" to which such ownership entitled them upon a taking for public use is, as we have hereinbefore stated, not in issue.

Appellant argues that in taking over the operation of respondents' lines it did not exercise its right of eminent domain; and that all that it has done has been to continue the use of these lines for the purpose for which

they were constructed. This argument is without merit. The constitutional provision (art. I, Sec. 17, Const. of S. C.) is self-executing, *Chick Springs Water Co. v. State Highway Department,* 159 S. C. 481, 157 S. E. 842; *Godwin v. Carrigan,* 227 S. C. 216, 87 S. E. (2d) 471; *Smith v. City of Greenville,* 229 S. C. 252, 92 S. E. (2d) 639; its protection extends to every essential element of ownership, *Gasque v. Town of Conway,* 194 S. C. 15, 8 S. E. (2d) 871; *Early v. South Carolina Public Service Authority,* 228 S. C. 392, 90 S. E. (2d) 472. The record fully supports the finding by the circuit judge "that the water lines installed by the plaintiffs at their own expense have been incorporated in and made a part of the water distribution system of the defendant and that, had such not been done, it would have been necessary for the defendant to construct these lines at its own expense."

Appellant's contention appears to be that since water lines were essential to the salability of the properties, their installation by respondents was a contribution to the subdivisions and thence to the public generally and to appellant in particular, and that respondents had therefore given up all ownership of such lines. In support of this contention it cites *City of Danville v. Forest Hills Development Corporation,* 165 Va. 425, 182 S. E. 548, and *Spaugh v. City of Winston-Salem,* 234 N. C. 708, 68 S. E. (2d) 838.

In *City of Danville v. Forest Hills Development Corporation, supra,* the city having annexed a contiguous subdivision and having taken over its water, gas and sewer mains and electric lines that its developers had installed, the latter sued to recover compensation therefor. The issues were submitted to a jury, which rendered a verdict in favor of the city; the trial court set it aside and rendered judgment for the plaintiff; and the city appealed. The supreme court reversed; pointed out that the Virginia Code permitted proprietors of subdivisions annexed by cities of more than 100,000 inhabitants under certain circumstances to recover from such cities the fair value of certain improvements con-

structed by them, but made no such provision with regard to subdivisions annexed by cities of less than 100,000 inhabitants; and said [165 Va. 425, 182 S. E. 550]:

"It would, therefore, appear to be the legislative policy in this state to prohibit recovery for any improvements made by the owners or proprietors of any subdivision subsequently annexed by a city with less than 100,000 inhabitants; and when the improvements, if any made, are approved by the city, they may not now be removed by such owner or proprietor without the consent of the city, by virtue of section 5222r of the Code."

The court further said that since Forest Hills had doubtless included the cost of the improvements in the sale price of its lots and since it could not have expected to derive revenue from the gas, water and electricity (which the city furnished to its purchasers), it lost nothing by the city's appropriation of these facilities, being actually relieved of the cost of their future maintenance; and that therefore it could see no reason for permitting the corporation to hold the city for the cost of these improvements under the circumstances. And: "It, moreover, seems plain that when the water mains, pipes, etc., were constructed by the plaintiff as an inducement to the purchase of its lots, the plaintiff thereby dedicated said mains and pipes to the use of the lot owners, and has no right to claim adverse ownership in or remove the same without such lot owners' consent."

For reasons before mentioned we do not think that the plaintiffs in the case at bar lost ownership of their water pipes because of the fact that their lots brought higher prices on account of the water supply thus rendered available; or that such ownership was lost because it was not productive of revenue; or that the plaintiffs' obligation to render available to the purchasers of their lots a supply of water constituted as a matter of law a dedication of the water pipes here in question. In these particulars our view differs from that expressed in the *Danville case*. The decision in that case appears to have rested primarily upon the

Virginia statute, *cf. Leonard v. Town of Waynesboro, infra;* which distinguishes it from the case at bar. (We note, in passing, that no issue was raised as to the constitutionality of the Virginia statute.) And this further distinction is to be observed, that in the *Danville case* the issue of liability was resolved against the plaintiff by the jury's verdict. As the court said, after discussing the North Carolina case of *Stephens Co. v. City of Charlotte,* 201 N. C. 258, 159 S. E. 414: "If we take that case as authority, it would seem that the question here involved is purely one for the jury and not for the court, and the trial court was, therefore, in error in setting the verdict aside." [165 Va. 425, 182 S. E. 550.] In the case at bar the master found as matters of fact that there had been no sale or gift or dedication, and that the plaintiffs owned their water lines at the time when the defendant appropriated them as part of its water distribution system; and in these findings the circuit court concurred.

In *Leonard v. Town of Waynesboro,* 169 Va. 376, 193 S. E. 503, the plaintiff filed a bill in equity, praying that the court establish the true corporate line of the town to determine whether her property lay within or without its corporate limits and, if it should be determined that it lay within the town, to require it to reimburse her for a water line that she had constructed to enable her to obtain from the town a supply of water. The lower court determined that her property lay within the limits of the town, but by a separate decree declined to allow her to be reimbursed for the water line. The latter holding was reversed on appeal, and the supreme court, distinguishing its earlier decision in *City of Danville v. Forest Hills Development Corporation* as having been governed by the annexation statute, and, referring to *Mount Jackson v. Nelson,* 151 Va. 396, 145 S. E. 355, said [169 Va. 376, 193 S. E. 506]: "The facts in that case were unlike those in the present case, but the principle applied there is applicable here, *viz.,* that where a town takes over and controls a water line built by others and uses it for the benefit of the town and consumers generally, and through

it delivers water for a profit, it is obligated to pay, on a *quantum meruit,* those who constructed the line."

*Spaugh v. City of Winston-Salem, supra,* is not in point. There the developers of a subdivision adjacent to the city who had, with the city's consent, connected their water system with the city's mains prior to annexation, were held bound by the city ordinance then in force which provided that whenever the city should permit those outside it limits to connect their water and sewer lines with its mains such lines, in the event that the territory in which they were located should be incorporated within the city's limits, should become the property of the city.

In *Abbot Realty Co. v. City of Charlotte,* 198 N. C. 564, 152 S. E. 686, the plaintiff, owning a number of lots fronting on certain streets within the corporate limits of the city, developed them for sale for residential and business purposes. There being at that time no city sewers along and under the streets on which these lots fronted, the president of the plaintiff corporation proposed to the city's commissioner of public works that the city construct them and connect them with its sewerage system; and the commissioner, stating that the city had no funds then available for this purpose, agreed that if the corporation would cause such sewers to be constructed the city would reimburse it soon as it should have available funds in hand. The plaintiff constructed the sewers in reliance upon that agreement, and thereafter the city reimbursed it for part of the cost but refused to pay the balance. Plaintiff then sued for said balance, and was nonsuited. On appeal the supreme court, holding the agreement void, nevertheless reversed the judgment and remanded the case for trial saying:

"It does not follow, however, that plaintiff is not entitled to recover in this action. There was evidence tending to show that after the sewers were constructed and paid for by the plaintiff, defendant took them over and incorporated them into its municipal sewerage system. This evidence should have been submitted to the jury upon an appropriate

issue involving plaintiff's contention that defendant is liable to it upon a *quantum meruit*. Notwithstanding the failure of plaintiff to sustain its contention that defendant is liable to it on the contract alleged in the complaint, the defendant should be and is liable for the reasonable and just value of the sewers, if the defendant took them over and incorporated them into its municipal sewerage system."

We note that the expression *"quantum meruit"* as here used means "the reasonable and just value of the sewers." It suggests, rather than excludes, the idea of "just compensation" in the constitutional sense.

In *Stephens Co. v. City of Charlotte, supra,* the plaintiff had constructed water and sewer lines for its residential suburban development known as Myers Park, outside the corporate limits of the city, and in 1916, with the city's permission, had connected these lines with the city mains. In 1928 the city extended its limit so as to take in Myars Park, and it thereupon took over the said water and sewer system. Plaintiff sued for compensation, and judgment in its favor was affirmed on appeal, the court rejecting, on the authority of *Abbot Realty Co. v. City of Charlotte, supra,* the contention that the plaintiff had nothing of value for the appropriation of which the city could be held liable.

In *Jackson v. City of Gastonia,* 246 N. C. 404, 98 S. E. (2d) 444, owners of certain lands outside the corporate limits of the city had subdivided them and, to increase the salability of the lots, had installed water and sewer lines. The city, exercising no control over or maintenance of said lines, supplied water through the water lines, required meters on the taps, and collected charges from the lot owners for the water used. Later, the area was incorporated into the city, which thereupon took over, used and controlled the said water and sewer lines to the same extent as if it had installed them originally. Action to recover "the reasonable value of water and sewer lines taken by the defendant municipality for a public purpose without compensating the plaintiffs, who had installed, maintained and were the owners of the said

lines prior to the time they were taken over by the defendant", resulted in a judgment of nonsuit, which was reversed on appeal, the court holding that under the facts as stipulated the plaintiffs were entitled to "recover on basis of *quantum meruit* for the reasonable and just value of the water and sewer lines." (Here again *"quantum meruit"* is used in the sense of just compensation, the court's mandate directing that upon remand of the cause "judgment be entered in accordance with the stipulations of the parties as to reasonable value of the lines so taken over, used and controlled.")

The recent case of *Styers v. City of Gastonia,* 252 N. C. 572, 114 S. E. (2d) 348, 350, bears upon the issue before us. There the plaintiffs had constructed water lines outside the city limits, in an area in which they owned no property. These lines, which were connected with the city mains, were constructed at the suggestion of the city's director of utilities, and as an investment from which the plaintiffs would profit by selling to owners of adjacent properties the right to tap on to them and thereby obtain water from the city, which would also benefit by the sale of its water to the plaintiffs' licensees. The city's director of utilities agreed that if and when the city's boundaries should be enlarged to include the lines the plaintiffs would be reimbursed for the amount that they had expended in constructing said lines. In 1955 the city's boundaries were enlarged and, as enlarged, included the plaintiffs' lines. Some time thereafter the city, which through its director of utilities had been requiring a permit from the plaintiffs before making a connection with their lines, proceeded to make such water connections for new customers without obtaining authority from the plaintiffs to do so, and proceeded to take over control of the said lines. Thereafter the plaintiffs demanded compensation, which the city refused; and the plaintiffs brought action to recover it. They did not rest their claim on the agreement before mentioned; they alleged and proved the said agreement for the sole purpose of negativing the city's

contention of an offer to dedicate, accepted. Judgment of nonsuit was reversed, the court adverting to the fact that the agreement was void, and that consequently the mere extension of the corporate limits created no liability, and saying: "The liability arose when, and only when, the city appropriated plaintiffs' property to its own use. This appropriation imposed on it a duty to pay the fair value of the property taken." Citing Article I, Section 17 of the North Carolina Constitution; and several North Carolina decisions, among them *Abbot Realty Co. v. City of Charlotte, supra,* and *Jackson v. City of Gastonia, supra.*

In addition to the cases before mentioned, counsel cite several from other jurisdictions. Brief discussion of them, which follows, reveals that they have little or no persuasive value as to the issues here.

*Ford Realty & Construction Co. v. City of Cleveland,* 30 Ohio App. 1, 164 N. E. 62, turned on a written contract between the plaintiff and the council of the Village of West Park (that was later taken into the corporate limits of Cleveland), whereby the former agreed to install water mains in its subdivision without expense to the village, and, further, that the village should have the right to utilize these mains as part of its system, and that no action that the village might take should be deemed an appropriation.

*South Memphis Land Co. v. City of Memphis,* 18 Tenn. App. 142, 74 S. W. (2d) 209, concerned sewer lines installed by the plaintiff in an area later annexed by the city. Prior to the annexation the plaintiff had charged rental for the use of its sewers; after the annexation it voluntarily abandoned all attempts to collect rentals. The city did work on the sewers, repaired them, and removed stoppage, without objection on the part of the plaintiff; it exercised the same regulatory control over them as it did over sewers that it had constructed; it offered to permit plaintiff to make connections and repairs under city supervision; it refused to purchase or pay for the sewers; and it denied intention to

claim them. The action was for conversion, which the court held was not established by these facts.

In *Hightower v. City of Tyler,* Tex. Civ. App. 1939, 134 S. W. (2d) 404, 405, the owners of a suburban development adjacent to the city constructed water and sewer lines, charged the purchasers of the lots with their proportionate part of the cost of such construction, and conveyed to them, along with the lots, title to that part of the water and sewer lines in the street on which they fronted, and which they had dedicated to the public. Before laying these lines, plaintiff had requested the city commission to provide for repayment of the cost of such construction; but this request was declined and the plaintiffs were advised that if their lines were laid out in conformity with the city's specifications they would be permitted to connect them with the city's system at the city limits, but "without any obligation or agreement on the part of the City to ever take over or pay for any such mains or lines." The area was later taken into the city, which continued to supply water through plaintiffs' lines and to charge customers as before, but at a lower rate than had been charged prior to the annexation; and the city refused plaintiffs' demand that it compensate them for the cost of the lines. The court, affirming judgment for the defendant, concluded that since the city had put the lines to no other use than that contemplated by the plaintiffs, who had reserved no interest in or right to use them and who had never requested the city to cease such service, the plaintiffs had given consent to the city to make such use of the lines as was made.

*Country Club District Service Co. v. Village of Edina,* 214 Minn. 26, 8 N. W. (2d) 321, was an action by a privately owned utility company to recover for services allegedly rendered by it to the village over a period of ten or twelve years through the use of fire hydrants and storm sewers installed within the village by developers of a subdivision, who had later sold the controlling interest in the stock of the plaintiff company. The facts in that case bear little resemblance to those here. But the court, denying recovery, and pointing

out that the developers had represented to the people of the subdivision that the prices they were paying for lots would include a proportionate charge for repayment of the expense of putting in the various improvements, and that they would never be bothered with any assessments for them, quoted with approval from the decision of *City of Danville v. Forest Hills Development Corporation, supra,* to the effect that such conduct constituted a dedication of the utilities to the use of the lot owners.

In *Wilkinson v. City of Shreveport,* La. App. 1936, 165 So. 471, the action was for conversion; and the court, following *South Memphis Land Co. v. City of Memphis, supra,* held the plaintiff's petition against the city for the value of water and sewer lines installed by plaintiff and used by the city after annexation of the area insufficient to allege such a cause of action, the petition not alleging that such use had been protested, but on the contrary intimating that the plaintiff had permitted such use and desired rent therefor.

In *Paar v. City of Prescott,* 1942, 59 Ariz. 497, 130 P. (2d) 40, recovery was allowed, on the theory of unjust enrichment, for the reasonable value of the city's use, within the period of the statutory limitation, of plaintiff's private suburban water system which was connected with the city system, the city having thereby collected substantial revenue from consumers, and there having been no agreement between the parties as to the amount to be paid by the city for such use.

*Selected Investments Corporation v. City of Lawton,* Okl., 1956, 304 P. (2d) 967, was an action in replevin for water pipes and mains rented by the City of Lawton from the plaintiff for distribution of city water to two city additions. As to the lines in one of these areas, there was a formal lease-purchase agreement between the plaintiff and the city whereby the latter agreed to lease the system at a rental of $1.00 per month for each home or consumer unit that tapped the system to purchase water from the city, and whereby the

city was also given the option to purchase the system for what it had cost the plaintiff, less amounts paid as rental prior to the date fixed for exercise of the option. As to the lines in the other area, a similar agreement had been entered into, but was not reduced to writing. On the cost of the system in one area the city made a partial payment; the system in the other area was constructed later, and no payment was made by the city on its cost. Plaintiff's demand that the city either complete payment or return the systems was refused, and the action followed, the complaint praying judgment that the city be required to return the systems or, if that could not be done, to pay plaintiff their actual value. Judgment for the defendant was reversed on appeal, two members of the court dissenting for the reason that in their opinion the agreement on the city's part violated certain provisions of Oklahoma's Constitution. The majority opinion rested upon the conclusion that under its agreement with the city the plaintiff had the right to expect the city either to pay for the systems or to relinquish them.

We know of no legislative policy in this state such as that upon which the case of *City of Danville v. Forest Hills Development Co., supra,* was decided. In at least one instance in which a water district was created embracing territory served by privately owned water systems a contrary policy is evident. *Cf. Mills Mill v. Hawkins,* 232 S. C. 515, 519, 103 S. E. (2d) 14, 20, where this court, adverting to the provisions of the 1955 Act, 49 Stat. at L., p. 1400, creating Una Water District in Spartanburg County and empowering it *inter alia* to "purchase, acquire and continue the use and operation of any and all of the water lines and sewer lines that may presently exist in the area," said: "It is fair to assume that under this provision appellants will be compensated for any of their lines which are suitable for use in the plans adopted by the commissioners."

Affirmed.

STUKES, C. J., and TAYLOR and Moss, JJ., concur.

OXNER, J., did not participate.