*Decision will be entered under Rule 50.*

DERBY HEIGHTS, INC., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 6901–65.  Filed September 22, 1967.

*Robert A. Dobson III* and *Robert A. Dobson, Jr.*, for the petitioner.
*David S. Meisel*, for the respondent.

### OPINION

ATKINS, *Judge:* The respondent determined a deficiency in income tax for the taxable year ended March 31, 1962, in the amount of $832.71. The issue is whether the gain derived from compensation awarded to the petitioner as a result of the condemnation of waterlines constructed by it in connection with the development of its real estate subdivision is taxable as ordinary income or as capital gain.

All of the facts have been stipulated and the stipulations are incorporated herein by this reference.

The petitioner is a corporation organized and existing under the laws of the State of South Carolina and has its principal place of business in Greenville, S.C. It keeps its books and prepares its income tax returns on an accrual method of accounting on the basis of a fiscal year ending March 31. The petitioner's Federal income tax return for the taxable year ended March 31, 1962, was filed with the district director of internal revenue at Columbia, S.C. On the date the petition herein was filed the petitioner's principal office was located in South Carolina.

During the period involved herein the petitioner was engaged in the business of owning and developing residential subdivisions. As a necessary incident to the successful development of its real estate located in Greenville County, S.C., and in order to further the sale of lots therein, the petitioner constructed, at a cost of $32,527.72, waterlines under the streets it provided in the real estate subdivisions. The streets were conveyed to Greenville County, S.C. During 1954 and 1955 the City of Greenville furnished water to the lot owners in the subdivisions through the waterlines constructed by the petitioner.

In 1955 the Gantt Water & Sewer District (hereinafter sometimes called the district), a public corporation created by South Carolina, took the waterlines from the petitioner in the exercise of its power of eminent domain. Upon such taking, the district incorporated the waterlines into its water distribution system and, pursuant to an agreement with the City of Greenville, furnished water to lot owners in the subdivisions. The district failed to compensate the petitioner for its taking of the waterlines, and the petitioner brought suit against the district to

recover therefor. Pursuant to the decision of the Supreme Court of South Carolina (*Derby Heights, Inc.* v. *Gantt Water and Sewer District*, 237 S.C. 144, 116 S.E. 2d 13), the petitioner received during the taxable year ended March 31, 1962, an award in the total amount of $35,619.55.

In the balance sheets included in its Federal income tax returns for the taxable years ended March 31, 1954, through March 31, 1962, the cost of the waterlines was included in the petitioner's land inventory. On its returns the petitioner deducted from gross receipts a prorata portion of the cost of the waterlines each year as its lots were sold.[1] The waterlines service a total of 325 lots, of which 307 had been sold as of March 31, 1962. Excluding from consideration any interest in the waterlines which may have passed to subdivision lot owners upon their purchases of lots, at no time did the petitioner offer the waterlines for sale or sell any interest in them.

Excluding the transaction herein involved from consideration, the petitioner had no transactions during its taxable year ended March 31, 1962, involving assets described in section 1231 of the Internal Revenue Code of 1954.

On its return for the taxable year ended March 31, 1962, the petitioner deducted from the award $10,800.90 of attorney fees which it had paid in connection with the suit and reported the remainder, $24,818.65, as long-term capital gain. In the notice of deficiency the respondent determined that the $24,818.65 net gain resulting from the award constituted ordinary income rather than long-term capital gain, explaining his adjustment as follows:

It is determined that of the amount awarded to you in the taxable year ended March 31, 1962, $21,726.82 represents a recovery of the cost of water lines includible as ordinary income rather than long-term capital gain and $3,091.83 represents interest income. Therefore, ordinary income is increased $24,818.65 and long-term capital gain of $24,818.65 reported is eliminated.

The petitioner contends that the waterlines constituted property used in its trade or business, within the meaning of section 1231 of the Internal Revenue Code of 1954,[2] and that therefore the gain of

---

[1] The parties stipulated that the amounts were deducted from gross income, but from the returns themselves it is apparent that the amounts were deducted as a part of the cost of lots sold. On brief the petitioner states that this method of recovering the cost was the only realistic one and was in effect the unit-of-production method of depreciation.

[2] Sec. 1231 provides, in part, as follows:

(a) GENERAL RULE.—If, during the taxable year, the recognized gains on sales or exchanges of property used in the trade or business, plus the recognized gains from the compulsory or involuntary conversion (as a result of destruction in whole or in part, theft or seizure, or an exercise of the power of requisition or condemnation or the threat or imminence thereof) of property used in the trade or business and capital assets held for more than 6 months into other property or money, exceed the recognized losses from

$24,818.65 (the amount of the award of $35,619.55 less attorney fees of $10,800.90) resulting from the taking thereof by the district should be considered, as provided in section 1231, as gain from the sale or exchange of a capital asset held for more than 6 months, namely, long-term capital gain. The respondent, on the other hand, contends that the waterlines did not constitute property used in the petitioner's trade or business, within the meaning of section 1231, and that therefore the gain is to be taxed as ordinary gain. It is his position that in any event $3,091.83 of the amount received constituted interest income and is therefore taxable as ordinary income.

Section 1231(b) defines the term "property used in the trade or business" as meaning property used in the trade or business "of a character which is subject to the allowance for depreciation provided in section 167" held for more than 6 months, and real property used in the trade or business held for more than 6 months, which is not property of a kind which would properly be includable in inventory or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business. Section 167 of the Code provides for the deduction of a reasonable allowance for depreciation of property used in the trade or business or of property held for the production of income.

In *Frank B. Cooper*, 31 T.C. 1155, in holding that the taxpayer was not entitled to a deduction for depreciation on improvements made to subdivided real estate, we pointed out that it has been consistently held that the cost of such improvements is properly allocable to the basis of the lots and is to be recovered, for tax purposes, upon the sale of the lots, rather than by way of depreciation deductions under section 167. The basic principle is that ordinarily such improvements do not constitute separate assets used in the trade or business or held for the production of income but are improvements to the subdivision which is held for sale in parcels.

Under some circumstances a facility constructed by a developer may in fact constitute a separate asset the cost of which is not properly a part of the cost of the lots to be sold. Thus in *Colony, Inc.*, 26 T.C. 30,

---

such sales, exchanges, and conversions, such gains and losses shall be considered as gains and losses from sales or exchange of capital assets held for more than 6 months. * * *

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

(b) DEFINITION OF PROPERTY USED IN THE TRADE OR BUSINESS.—For purposes of this section—

(1) GENERAL RULE.—The term "property used in the trade or business" means property used in the trade or business, of a character which is subject to the allowance for depreciation provided in section 167, held for more than 6 months, and real property used in the trade or business, held for more than 6 months, which is not—

(A) property of a kind which would properly be includible in the inventory of the taxpayer if on hand at the close of the taxable year,

(B) property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business, or

affirmed on other issues (C.A. 6) 244 F. 2d 75, it was held that the cost of a water supply system which the developer continued to own and operate should not be regarded as part of the basis of the lots sold. However, where the basic purpose for the construction of the facility is to induce people to buy lots in the development, the cost of such facility is properly a part of the cost basis of the lots, even though the developer retains title to the facility or an interest therein. In *Estate of M. A. Collins*, 31 T.C. 238, in holding that the cost of a sewerage disposal system which was constructed for the purpose of inducing and making possible the sale of lots constituted a part of the cost of lots sold, we stated in part:

A careful consideration of the cases above cited [*Colony, Inc.*, 26 T.C. 30, affirmed on other issues 244 F. 2d 75. *Albert Gersten*, 28 T.C. 756, and *Country Club Estates, Inc.*, 22 T.C. 1283] indicates that if a person engaged in the business of developing and exploiting a real estate subdivision constructs a facility thereon for the basic purpose of inducing people to buy lots therein, the cost of such construction is properly a part of the cost basis of the lots, even though the subdivider retains tenuous rights without practical value to the facility constructed (such as a contingent reversion), but if the subdivider retains "full ownership and control" of the facility and does "not part with the property [i.e., the facility constructed] for the benefit of the subdivision lots," then the cost of such facility is not properly a part of the cost basis of the lots.

In *Herzog Building Corp.*, 44 T.C. 694, we stated that:

it has consistently been held that the cost of constructing a water or sewerage system for a new development may be added to the cost of lots sold, although the developer retains title to the facility, so long as the project was undertaken primarily to further the sale of lots or houses and the rights retained do not amount to "full ownership and control" of the facility constructed. *Willow Terrace Development Co.* v. *Commissioner*, 345 F. 2d 933 (C.A. 5, 1965), affirming 40 T.C. 689 (1963) ; *Commissioner* v. *Offutt*, 336 F. 2d 483 (1964), affirming a Memorandum Opinion of this Court; *Estate of M. A. Collins*, 31 T.C. 238 (1958). On the other hand, where a developer retained full ownership and control over the assets comprising a water supply system built in order to make its lots salable, it was held that the costs of the system could not be allocated to the cost of lots sold. *Colony, Inc. supra*, at 46.

In *Willow Terrace Development Co.*, 40 T.C. 689, affd. (C.A. 5) 345 F. 2d 933, we sustained the taxpayer's position that the cost of water and sewerage systems should be treated as a part of the cost of lots sold, as opposed to the Commissioner's position that such systems constituted an independent investment in separate valuable property, the cost of which should be recovered through capitalization or subsequent sale. We stated that "the pivotal consideration is whether the basic purpose for constructing such utilities systems in real estate subdivisions is to induce people to buy lots in such subdivisions." In that case the systems had been constructed in order to sell lots and to obtain FHA financing. Pursuant to FHA requirements title to the facilities was transferred to an approved trustee to insure adequate services to the

dwellings until such time as the systems might be taken over by a governmental authority or other adequate systems might be provided by a governmental authority. Later the City of Houston purchased the facilities for an amount far in excess of the cost thereof to the taxpayer, but we held that this fact did not call for any different result.

In the instant case it is clear that the waterlines were constructed by the petitioner for the sole purpose of furthering the sale of the lots in the subdivision. The petitioner's basic purpose was not to operate the waterlines for profit or to hold them otherwise for the production of income. While the petitioner did not formally dedicate the waterlines to a public use and did not specifically put them in trust for the benefit of purchasers of lots, we think it did not retain "full ownership and control" thereof within the contemplation of the decided cases. As has been stipulated, the waterlines were constructed as a necessary incident to the successful development of the real estate and in order to further the sales of lots. It seems clear to us, therefore, that the purchasers of lots, having relied upon the existence of these facilities, did obtain some beneficial interest therein. While the Supreme Court of South Carolina, in approving the award, stated that the petitioner retained ownership of the lines it recognized that the ownership entailed a responsibility toward the lot owners in that the petitioner was under a duty to maintain adequate waterlines. As pointed out in *Willow Terrace Development Co.*, *supra*, the fact that a developer retains a salable interest is not decisive.

Under the circumstances, we think that the waterlines must be considered as improvements to the development, the cost of which is properly a part of the cost basis of the lots sold, and that they may not properly be considered as separate property used by the petitioner in its trade or business of a character which is subject to the allowance for depreciation provided in section 167. Such property, therefore, does not qualify as property used in the trade or business for purposes of the application of section 1231 of the Code.

The petitioner alternatively contends that the waterlines constituted real property used in the trade or business and therefore come within the operation of section 1231. However, whether or not they constituted real property, we are of the opinion, for reasons stated above, that they cannot be considered as property used in the petitioner's trade or business within the contemplation of section 1231.

In view of our conclusion above it is unnecessary to consider the petitioner's contention that the respondent erred in determining that a portion of the award represented interest taxable as ordinary income.

*Decision will be entered for the respondent.*