**Wade H. LIVINGSTON, as Administrator of the Estate of Grady W. Livingston, Deceased, Plaintiff,**

v.

**NATIONWIDE MUTUAL INSURANCE COMPANY, Defendant.**

**Civ. A. No. 68–423.**

United States District Court
D. South Carolina,
Orangeburg Division.

Jan. 29, 1969.

W. T. Klapman, and L. M. Fanning, Orangeburg, S. C., for plaintiff.

C. Walker Limehouse, Orangeburg, S. C., for defendant.

## ORDER

HEMPHILL, District Judge.

Plaintiff, Administrator of deceased estate, seeks recovery from defendant on an automobile liability insurance policy held by wife of the deceased. The matter was heard before the court on December 10, 1968, sitting without a jury. This court, therefore, as directed, must find and state separately its findings of fact and conclusions of law.

## FINDINGS OF FACT

1. On August 18, 1967, plaintiff's intestate, while seated on a chair in front of a ticket office at a dirt race track of G. D. Livingston, was struck and killed by a tire which broke free of the 1955 Chevrolet racing car driven by W. R. Bonnette of Cardova, South Carolina.

2. The race track involved was built on 52 acres of land in 1966. Plaintiff's intestate was working at the track at the time of his demise where it had been his duty to direct traffic across the track and into the infield area.

3. The car driven by W. R. Bonnette was originally a 1955 Chevrolet Sedan. When purchased by Bonnette it had no motor or transmission and subsequently a 1963 Chevrolet six cylinder engine, as well as a 1963 Chevrolet transmission was placed in the shell of the car. The centers of the wheels were removed and replaced by quarter inch steel plates which were used to strengthen the wheel.

The doors of this vehicle are welded shut causing entrance to be made via a window. The headlights, tail lights, and brake lights have been removed as well as all the glass except for the front windshield. Steel pipe has been inserted around the top of the vehicle to operate as roll bars. The altered car has no horn, no muffler, one bucket seat and is equipped with safety belts and shoulder harness. The car has no speedometer or fuel gauge. It is not registered with the State Highway Department of South Carolina or of any other State.

This vehicle was not used on the public roads of South Carolina but was used solely for racing purposes. It was transported from track to track by use of a trailer.

4. At the time of the fatal accident the wife of plaintiff's intestate had automobile insurance policy No. 61–108–876 with defendant, Nationwide Mutual Insurance Company. This policy was in effect at the date of the accident and covered three separate vehicles. One premium paid for all three vehicles. Death benefits are shown to be $5,000.

The policy contained the following as *Agreement II Land Motor Vehicle:*

For purposes of this policy "land motor vehicle" does not include a vehicle operated on rails or crawler-treads nor, except under Coverages C (1), C(2), D(1) and D(2), while actually upon public roads, does it include a farm type tractor, farm machinery or implements, or equipment designed principally for use off public roads.

The policy also contained the following conditions:

4. OTHER INSURANCE: COVERAGES A, B, C(1), D(1), D(2), E(1) and F.

With respect to the protection afforded herein: (d) by Coverage D(1) any payments for Confinement Benefits (Section 2) and Death Benefits (Section 3) to or for the benefit of any one person shall discharge all liability of the Company for said benefits to that person under this or any other Family Compensation Insurance.

and

Condition 5: *Limits of Liability*

Coverages C(1), C(2), D(1), D(2), E(1) and E(2):

The affording of insurance to more than one person or to more than one automobile or land motor vehicle hereunder shall not operate to increase the limits of the Company's liability. A motor vehicle and attached trailer shall be held to be one automobile as respects the limits of liability under Coverages C(1) and C(2).

5. The court finds that no public roads existed on the 52 acre track and the roads on this acreage are not maintained by the county or the State. The closest public highway is 521.

CONCLUSIONS OF LAW

A. This court has jurisdiction to determine the issues involved in this matter by reason of diversity of citizenship and jurisdictional amount exceeding $10,000.[1]

---

1. Plaintiff claims jurisdiction in this court by asserting that $5,000 coverage is available on each vehicle named in the policy. Defendant countered that Section 4(d) Other Insurance under Conditions along with Section 5 *Limits of Liability* would prevent recovery of more than $5000.

The court feels that the following is determinative on the issue of jurisdiction even though it does not reach that issue of limits:

In making this examination, the court is guided by rules which have been developed to prevent this preliminary jurisdictional determination from depriving the party unfairly of a trial on the merits. In a leading case, the Supreme Court put the rule this way: 'The rule governing dismissal for want of jurisdiction in cases brought in the federal courts is that, unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal.' Thus in general the court looks to the

B. At the outset the court is confronted with Agreement II of the policy which works to exclude coverage where injury results from the use of "a farm type tractor, farm machinery or implements, or equipment designed principally for use off public roads," except while actually upon a public road. From this language several problems evolve. Initially it must be determined whether or not the car was designed principally for use off public roads. If it was so designed then was it being used on a public road at the time of the fatal accident. Of course, if it was not designed principally for use off public highways, the agreement would not affect, or operate as a bar to the rights of the plaintiff. While in the alternative, if the car in question was designed principally for use off public highways and was in fact being operated off public highways, then coverage would not be afforded to the plaintiff's intestate under the terms of this policy.

C. The court finds much persuasion in the case of Beagle v. Automobile Club Insurance, 176 N.E.2d 542 (Ohio Com. Pl.1960). The case is almost indistinguishable from the facts of the present case. The defining language involved was:

Division 2. To or for each insured who sustains bodily injury, sickness or disease, caused by accident, while in or upon, or while entering into or alighting from, or through being struck by, an automobile.

IV Automobile defined, * * *

Under division 2 of coverage C, the word 'automobile' means a land motor vehicle or trailer not operated on rails or crawler-treads, but does not mean: (1) a farm type tractor or other equipment designed for use principally off public roads, except while actually upon public roads, * * *.

In that case, as this, the vehicle of destruction was a tire which was spun loose from a racing car. Defendants entered the same defense i. e. the racer was designed principally for use off public roads. The court held that the original design was not controlling and listed the alterations made on the vehicle which are virtually the same as those in the present case. The Ohio court concluded that the racing car was a land motor vehicle "designed for use principally off public roads."

Urged by the plaintiff is the theory of *ejusdem generis* which would limit the language ", or equipment designed principally for use off public roads" to farm type machinery. It is asserted that these are general words following the enumeration of a particular class.

■ The court again follows the reasoning of the Ohio court and finds no ambiguity existing. *Ejusdem generis* does not apply. If the wording was farm type machinery or other farm equipment or other equipment clearly the class would be limited exclusively to farming equipment. The contrary must be found in the present case for "farm type tractor, farm machinery or implements" covers any kind of farm machinery. Therefore ", or equipment designed principally for use off public roads" must have some meaning and must relate to equipment other than farming equipment.

■ The court concludes as a matter of law that the original design does not control, that the car in its altered condition is designed principally for use off public highways, and that *ejusdem generis* has no application in this case.

---

sum demanded by plaintiff. It does not matter that on the face of the complaint there may appear a defense to part of the claim, since possibly defendant will not assert that defense. Nor does it matter that defendant admits he is liable for the sum prayed for. Where there is a justiciable claim for a certain amount, there is a controversy, or dispute, between the parties within the meaning of the statute, even though the defendant does not controvert or dispute the claim. It is sufficient that he does not satisfy it. Wright on Federal Courts, 1963, p. 94.

D. Having concluded as a matter of law that the auto racer was designed principally for use off public highways, the court must move to decision on the issue of whether the racer was being used on a public highway at the time of the accident. The court finds as a matter of law that it was not being so used. The South Carolina Supreme Court has defined dedication as follows:

> Dedication is the intentional appropriation of land, or of an easement therein, for some proper public purpose. 16 Am.Jur., Dedication, Section 2; 26 C.J.S. Dedication § 1. It is not a unilateral transaction; for its completion there must be acceptance by the public, of the property, for the particular purpose. In the absence of an express gift, one who asserts a dedication must show conduct on the part of the landowner clearly, convincingly and unequivocally indicating his intention to create a right in the public to use the land, adversely to him, for such purpose. Town of Estill v. Clarke, 179 S.C. 359, 184 S.E. 89; Shia v. Pendergrass, 222 S.C. 342, 72 S.E.2d 699.

The above was quoted from Derby Heights, Inc. v. Gantt Water and Sewer District, 237 S.C. 144, 116 S.E.2d 13 at p. 16 (1960).

 Further evidence of the fact that no public road exists is founded on the realization that mere use of a road with knowledge and consent of the owners does not make a road a public way unless the use is accompanied by showing of recognition by public authority or maintenance by such authority. State Road Commission v. Oakes, 150 W.Va. 709, 149 S.E.2d 293 (1966) citing case.

The testimony of Mr. Livingston points conclusively to the finding that there are no public roads on the acreage. There is no showing whatsoever of his intention to dedicate any of this property to public use. All of the evidence is to the contrary and the court so finds.

 E. The court concludes as a matter of law that the car driven by Bonnette was altered so as to be designed principally for use off public roads, that the maximum *ejusdem generis* is not applicable, that the vehicle was not being operated on a public road and that the provision of the policy is free of ambiguity.

Let the Clerk enter judgment for the defendant.

And it is so ordered.