EZRA W. MASON *et al. vs.* BOWERMAN BROS., INC. *et al.*

JANUARY 29, 1963.

PRESENT: Condon, C. J., Roberts, Powers and Frost, JJ.

ROBERTS, J. This bill in equity was brought to enjoin the respondents from making any industrial use of two lots of land located on Metacom avenue in the town of Bristol pursuant to an amendment to the terms of the zoning ordinance of that town purporting to change the zoning classification thereof from residential to industrial. While the bill was pending the respondents entered a special plea, which was heard as to the truth thereof by a justice of the superior court, who thereafter entered a decree denying and dismissing the bill. From that decree the complainants have prosecuted an appeal to this court.

The record discloses that respondents, Bowerman Bros., Inc. and Agnes S. Mahoney, are the owners of two parcels of land located on the westerly side of Metacom avenue

designated as lots 7 and 1 on assessors' plat 94. It is not disputed that until August 1960 each of these lots had been zoned for residential uses. Neither is it disputed that prior to June 17, 1960 application for the grant of an exception or variance with respect to these two parcels had been made to the zoning board of review of the town of Bristol. This application was withdrawn on June 17, 1960 without any action having been taken thereon by the board. On July 7, 1960 the town council amended the provisions of the zoning ordinance then in effect so as to reclassify the instant lots from a residential to an industrial use. This amendment was approved at a special financial town meeting held on August 1, 1960. Thereupon complainants brought their bill of complaint to enjoin the use of the lots for any industrial purpose on the ground that the enactment of the amendment to the ordinance was invalid.

On June 28, 1961, at which time the instant bill was pending hearing, the town council enacted a zoning ordinance wherein the ordinance then in effect and all amendments thereto were repealed. The newly enacted ordinance was submitted to and approved by a special financial town meeting held on July 24, 1961. Under the pertinent provisions of such ordinance lots 7 and 1 were placed in an industrial zoning classification. Thereafter, on October 11, 1961, respondents filed a special plea in the instant case, alleging therein the enactment of the new ordinance on June 28, 1961 and contending that by virtue thereof the issues raised by the instant bill had been made moot. Thereafter, by stipulation, the cause went to hearing on the truth of the special plea. At the conclusion thereof the trial justice, finding that the ordinance of June 28, 1961 had been validly enacted, entered the decree denying and dismissing the bill.

The several contentions of error urged by complainants go to the validity of the action of the special financial town

meeting in voting to approve the enactment by the town council of the zoning ordinance of June 1961. In our opinion, however, an antecedent issue is here raised, that being whether upon its enactment by the town council the new zoning ordinance became effective without being approved by a financial town meeting pursuant to the provisions of P. L. 1929, chap. 1450.

The complainants contend that chap. 1450 is applicable to any legislative action of the town council relating to zoning which, they argue, to become effective must be approved by a financial town meeting. The trial justice ruled to the contrary, however, holding, in substance, that the provisions of chap. 1450 have no application to enactments which are amendatory of the zoning ordinance. Taking the view that the ordinance of June 1961 was, in effect, amendatory, he held that it became effective upon enactment by the town council and without the approval of the special financial town meeting, and therefore the enactment of the new ordinance rendered the issues raised in the instant bill moot.

The authority to enact zoning ordinances was by the provisions of the original enabling act, G. L. 1923, chap. 57, conferred only upon the city councils of the several cities. That act was thereafter so amended by the provisions of P. L. 1925, chap. 643, as to confer upon the several town councils a similar authority to enact such ordinances upon the approval of the financial town meeting of such towns.

Such limitation upon the authority of the town councils to legislate in this respect remains in full effect. The pertinent provisions of the general enabling act now in effect, G. L. 1956, §45-24-1, read: "* * * and the town council of any town, upon the approval of the financial town meeting of such town, shall have the power in accordance with the provisions of this chapter * * * by ordinance to regulate and restrict * * *."

Later the general assembly enacted P. L. 1929, chap. 1450,

which legislation applied specifically to the authority of the town council of Bristol to enact a zoning ordinance. In sec. 1 of chap. 1450 the town council was authorized to enact a zoning ordinance pursuant to the general enabling act as amended in 1925. It further provided in sec. 1 that "such zoning ordinance so enacted by said town council under the authority of this act shall become effective immediately without the approval of the financial town meeting * * * and shall have the same force and effect as if it had been so approved." In other words, the general assembly expressly authorized the town council of the town of Bristol to enact a zoning ordinance that would become effective when so enacted and without the approval of the financial town meeting.

Section 2 of chap. 1450 provides that upon the enactment of a zoning ordinance by the town council pursuant to the authority conferred in sec. 1 that authority shall expire. Said sec. 2 reads as follows: "Whenever a zoning ordinance shall have been enacted by the town council of the town of Bristol as provided for in section 1 hereof, all the provisions of chapter 57 of the general laws as amended by chapter 643 of the public laws of 1925 [now G. L. 1956, chap. 24 of title 45] including the requirement of the approval of a financial town meeting before any zoning ordinance can become effective, shall apply to all subsequent enactments of zoning ordinances by the town council of the town of Bristol whether in effect amending, abridging, modifying or repealing the zoning ordinance enacted by the town council of the town of Bristol under the authority of section 1 hereof."

The legislative intent as disclosed by said sec. 2 is that when the authority conferred on the town council in sec. 1 was exercised by the enactment of a zoning ordinance that authority was to expire and thereafter the town council's authority to enact a zoning ordinance was again to be

subject to the limitations of the general enabling act. However, §45-24-5 of the general enabling act does not require that enactments of a town council amending or repealing zoning legislation be approved by a financial town meeting to become effective.

The language of §45-24-5 reads in pertinent part: "The city or town council, as the case may be, shall have power, after a public hearing as herein provided, from time to time to amend or repeal any such ordinance and thereby change said regulations or districts * * *." It is clear then that generally the several town councils may amend or repeal zoning ordinances without approval on the part of the financial town meeting. When the provisions of sec. 2 of chap. 1450 are viewed in the light of the provisions of §45-24-5, the question arises whether the legislature intended to impose upon the town council of the town of Bristol the burden of requiring that its amendatory and repealing enactments be approved by a financial town meeting to become effective, a burden that generally is not imposed upon town councils by the provisions of §45-24-5.

No contention is made here that the effect of §45-24-5 is other than to relieve town councils of the necessity of obtaining financial town meeting approval for such enactments as amend or repeal zoning ordinances. The basic contention here is that the trial judge erred in construing sec. 2 as not requiring that the amendatory legislation of the town council of the town of Bristol be subject to approval of the financial town meeting. It is argued, in other words, that sec. 2, standing alone, constitutes a proper exercise of the legislative power and, while it purports to make applicable to enactments of the town council the limitations contained in the general enabling act, in particular §45-24-5 thereof, it also, when read literally, requires that amendatory ordinances be approved by the financial town meeting.

The language of sec. 2, when read literally, renders the legislative intention obscure. It makes the enactments of the town council subject to the general enabling act and appears to require amendatory and repealing enactments to be approved by a financial town meeting. Where ambiguity renders construction of a statute necessary, the primary object of the court is to ascertain the legislative intention from a consideration of the legislation in its entirety, viewing the language used therein in the light, nature, and purpose of the enactment thereof. *Nolan* v. *Representative Council,* 73 R. I. 498; *State* v. *Muldoon,* 67 R. I. 80, 92. In so construing the statute the court will not undertake to read the enactment literally if by so doing we attribute to the legislature an intention that is contradictory of or inconsistent with the evident purpose of the act. *O'Brien* v. *Waterman,* 91 R. I. 374, 163 A.2d 31.

It is clear that sec. 2 was intended to become effective upon an exercise of the power to enact a zoning ordinance conferred upon the town council in sec. 1. Thereafter, all subsequent enactments were again to be subject to the terms of the general enabling act. The intention, however, of the legislature is obscured by reason of the provisions in sec. 2 which appear to require any further amendatory or repealing enactments of the town council to be approved by a financial town meeting. In other words, read literally, sec. 2 requires something more than is required by the terms of the general enabling act.

It is our opinion that this confusion results from the legislature's having expressed itself tautologically. It does not render the legislation necessarily objectionable. *Emery Bird Thayer Dry Goods Co.* v. *Williams,* 98 F.2d 166, 172; *Olson* v. *Jordan,* 43 N.Y.S. 2d 348, 351. This tautology results from an insertion in sec. 2 of the parenthetical phrase "including the requirement of the approval of a financial town meeting before any zoning ordinance can become

effective * * *." The phrase follows immediately after those provisions of sec. 2 which expressly make the enactments of the Bristol town council subject to the general enabling act with the parenthetical phrase being repetitive of §45-24-1 thereof.

The trial justice noted that if the parenthetical phrase be disregarded, the statute then provides that the provisions of the general enabling act apply to "all subsequent enactments of zoning ordinances by the town council of the town of Bristol whether in effect amending, abridging, modifying or repealing the zoning ordinance enacted by the town council of the town of Bristol under the authority of section 1 hereof." The parenthetical phrase being omitted, it becomes clear that the legislature intended that the amendatory and repealing enactments of the town council were to be subject to the provisions of §45-24-5 and that the provisions of the enabling act apply also to enactments of the town council amending or repealing such ordinance as was enacted pursuant to sec. 1. The town council was to be precluded from acting to amend or repeal the ordinance enacted under sec. 1 other than pursuant to the provisions of the general enabling act.

The trial justice, apparently concerned as to the jurisdiction of the town council to enact zoning ordinances that are amendatory, so construed the act as to leave the parenthetical phrase without relationship to amendatory enactments. This, in effect, was to disregard the parenthetical phrase as being mere surplusage by reason of the tautology inhering therein. Thus the question arises of when the language of a statute may be held to constitute surplusage and properly be disregarded by the courts when construing statutes that are ambiguous.

The authority of the judiciary to delete or disregard words appearing in a statute for the purpose of construing such statute is one that has been rigidly circumscribed and

rarely exercised. It will never be done where the effect thereof would be to sustain a legislative intention that the unedited language of the enactment precludes. It is done only when such deletion or disregard of language is necessary to conform the terms of an enactment to a clear legislative intent. *Maguire* v. *State,* 192 Md. 615. It has been said that the altering of statutory language either by deletion or disregard thereof is seldom justified. *Bass* v. *Allen Home Improvement Co.,* 8 N. J. 219.

We have adhered to a policy of restraint in this matter and will so act only when it is clear that deletion or disregard is necessary to carry out a manifest legislative intent. *Carlson* v. *McLyman,* 77 R. I. 177. In *Casey* v. *Willey,* 89 R. I. 87, we said at page 95: "We must give meaning to these words, for it is not within our province to delete them as mere surplusage when the section, read in its entirety, demonstrates that they are significant." However, where the clear purpose of legislation is being defeated or obscured by reason of the language used by the legislature, this court will treat it as surplusage and disregard it for purposes of construction when the language, read in the light of the entire enactment, is clearly without significance.

The concept of statutory language as surplusage and subject to judicial rejection in order to give vitality to a clear legislative intent has been aptly stated by Judge Delaplaine in *Pressman* v. *State Tax Commission,* 204 Md. 78. Noting that it is not within the judicial competence ordinarily to add or strike words from legislative enactments, Judge Delaplaine went on to say at page 88: "However, where words are found in a statute which appear to have been inserted through inadvertence or mistake, and which are incapable of any sensible meaning or are repugnant to the rest of the statute and tend to nullify it, and the statute is complete and sensible without them, they may be rejected as surplusage. * * * Of course, it must be

certain that the Legislature could not possibly have intended the words to be in the statute, and that the rejection of them serve merely as a correction of careless language and actually gives the true intention of the Legislature. The cardinal rule of statutory construction is that the court should ascertain from the entire statute the intention to be accomplished by the enactment. When that intention is clear it should be carried out, even though it may be necessary to strike out or insert certain words."

When sec. 2 is read with the parenthetical phrase omitted, it has a plain, sensible meaning. It contemplates clearly, when so read, that the town council, in enacting zoning ordinances after an exercise of the authority conferred in sec. 1, would do so subject to all the provisions contained in the general enabling act. It follows then that in enacting amendatory or repealing ordinances it would do so subject to the provisions of §45-24-5 of the general enabling act. This is an intention that is obviously consistent with the purposes for which sec. 2 was enacted. If sec. 2 be read without omitting the parenthetical clause, however, it has the effect of nullifying that purpose in that it would require the town council's amendatory enactments to be subject to the approval of the financial town meeting, which procedure is clearly not required under §45-24-5.

We are of the further opinion that to give effect to the clear purpose of the legislation, sec. 2 must be read with the parenthetical clause omitted. Section 2 contemplates that legislative action on the part of the town council to alter the zoning ordinance enacted pursuant to sec. 1 must be undertaken pursuant to the provisions of the general enabling act. Section 2, if read with the parenthetical clause included, would also require submission of such enactments to the financial town meeting for approval. This, in our opinion, would render the provisions of sec. 2 irrational in the light of the clear purpose thereof. We do not question

the wisdom of the enactment embodied in sec. 2 but rather we decline to attribute to the legislature an intention to exercise the legislative power to reach an irrational conclusion.

Finally, it is our opinion that sec. 2, read in its entirety, is persuasive that the parenthetical phrase is without legal significance. Reading sec. 2 in the light of the legislative purpose, the parenthetical phrase becomes clearly cautionary in character, indicating that the town council may not alter or amend the zoning ordinance enacted pursuant to sec. 1 other than in conformity to the provisions of the general enabling act. It is our view that the parenthetical clause is without significance as that term is used in *Casey* v. *Willey, supra.* In other words, when sec. 2 is read in its entirety, the parenthetical phrase is clearly without any legal significance that relates to the exercise of the legislative power which resulted in the enactment of sec. 2 of chap. 1450 and for that reason may properly be disregarded in construing such section.

Because we take the view that the parenthetical phrase properly was treated as surplusage and disregarded in a construction of sec. 2, we are of the opinion that the trial justice did not err in ruling that the ordinance of June 1961 became effective upon its enactment by the town council without approval of a financial town meeting. The complainants argue further, however, that the trial justice erred in holding that the ordinance of June 1961 was amendatory in character and therefore not subject to approval of a financial town meeting to become effective. The substance of this argument, as we understand it, is that the ordinance of 1931 was expressly repealed by the ordinance of 1961, the effect of this being that there was no ordinance in existence at the time of the enactment of the ordinance in June 1961. This, complainants contend,

makes the June 1961 ordinance a new, and not an amendatory, enactment.

In the preamble of the ordinance of June 1961 the town council stated that the ordinance of 1931 was to be repealed upon the adoption of the 1961 ordinance. In Art. X of the ordinance of 1961 wherein provision is made for the effective date thereof, the 1931 ordinance is expressly repealed This latter provision, in our opinion, expresses the intent of the town council and provides that the ordinance "will take effect upon its adoption and all ordinances or parts of ordinances inconsistent herewith are hereby repealed." We do not perceive that this expression of intent on the part of the town council was contradicted by any other provision of the ordinance. In such circumstances it is well settled that we will presume that the town council did not intend that the continuity of the regulations for the use of land and properties be interrupted.

In *Berry* v. *Recorder's Court,* 124 N.J.L. 385, the New Jersey court, considering the effect of a repealer of this nature, said at page 388: "It is a secondary rule of construction that in such circumstances, nothing to the contrary appearing, the repealer becomes effective simultaneously with the approval of the new enactment, and that the new provisions are substituted for the old, and are to be considered as a continuance and modification of the old laws rather than as an abrogation of the old statutes and the re-enactment of new ones." It is our opinion that this language is particularly applicable in the instant case. We perceive nothing in the 1961 ordinance that negatives the intent expressed by the town council in Art. X thereof. In such circumstances it is our conclusion that the ordinance must be considered as being amendatory, and no error inhered in the conclusion of the trial judge to this effect.

The complainants' appeal is denied and dismissed, the

decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

*Harvey S. Reynolds,* for complainants.

*Adler, Pollock & Sheehan, William J. Sheehan, Charles A. Pisaturo,* for Bowerman Bros., Inc.

*Frank L. Martin,* Town Solicitor for Town of Bristol.

*Anthony R. Berretto,* for John Francis 3d et al.

*Morphis Jamiel,* for Agnes S. Mahoney et al., respondents.