180 N.J. Super. 227 (1981)
434 A.2d 648
GOVERNMENT EMPLOYEES' INSURANCE COMPANY, PLAINTIFF-RESPONDENT,
v.
GARY A. DANIELS AND DAVID P. DANIELS, DEFENDANTS-APPELLANTS, AND RICHARD PATTERSON, DEFENDANT.
Superior Court of New Jersey, Appellate Division.
Submitted May 12, 1981.
Decided August 10, 1981.
*228 Before Judges BOTTER, KING and McELROY.
Hockfield & Levine for appellants. (Barry J. Hockfield on the brief).
Roy D. Cummins for respondent (C. Kennon Hendrix of counsel and on the brief).
The opinion of the court was delivered by KING, J.A.D.
*229 This is a declaratory judgment action brought by Government Employees' Insurance (GEICO) seeking a determination that it was not obligated to provide benefits to Gary Daniels under the uninsured motorist provisions of a family automobile liability policy issued to his father, David Daniels. The Chancery Division judge found against coverage in an unreported opinion and the Daniels appeal.
The facts are not in dispute. On May 14, 1977 Gary, age 13, was operating a borrowed, uninsured Honda motorbike on a dirt motocross track designed for off-the-road motorbikes or dirtbikes. The course had one hill, one embankment, a banked turn known as a berm, and was used for recreational purposes and occasional racing. While Gary was operating the motorbike he was involved in a collision with Richard Patterson, also age 13, who was allegedly carelessly operating his uninsured Yamaha motorbike on the dirt track.
Patterson's bike had no license plate, turn signals, taillights, headlights or speedometer. It was equipped with a low-gear ratio to provide additional power over short distances. The tires had very deep treads with spiked knobs. The Yamaha bike could not be used on the highway because the knobby tires would cause it to slide out of control on a paved road. It was not registered with the State in any fashion and was strictly an off-highway recreational vehicle.
GEICO insured Gary's father under a family automobile policy issued in New Jersey with the standard endorsement for protection against uninsured motorists. The Daniels sought benefits under that coverage, claiming that the Patterson Yamaha qualified as an uninsured motor vehicle.
In the insuring agreement GEICO promised that:
The company will pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured highway vehicle, because of bodily injury or property damage, caused by accident and arising out of the ownership, maintenance or use of such uninsured highway vehicle; ..., [Emphasis supplied]
*230 The policy in pertinent part thereafter defines "a highway vehicle" as follows:
Highway vehicle means a land motor-vehicle or trailer other than a) a farm type tractor or other equipment designed for use principally off public roads, while not upon public roads, [Emphasis supplied]
The trial judge concluded that the uninsured motorbike fell within the emphasized exclusion in the definition of highway vehicle.
We perceive that this appeal involves two questions:
1. Does the language of N.J.S.A. 17:28-1.1 which requires the inclusion of an uninsured motorist (UM) endorsement on every automobile policy compel coverage in this case despite the policy's restrictive definition of a highway vehicle? See Selected Risks Insurance Co. v. Zullo, 48 N.J. 362 (1966).
2. If the answer to the above is no, is the exclusionary definition of "highway vehicle" in GEICO's policy sufficiently unambiguous in the circumstances to deny coverage to young Daniels?
N.J.S.A. 17:28-1.1 requires that the UM endorsement provide for payment to the insured of legal damages recoverable "from the operator or owner of an uninsured automobile." But the term "automobile" is not defined therein. Defendants contend that the broad descriptive definition of a motor vehicle found in N.J.S.A. 39:1-1 should apply. That statute defines motor vehicle as including "all vehicles propelled otherwise than by muscular power excepting such vehicles as run only upon rails or tracks and motorized bicycles." (A "motorized bicycle" is defined as a "pedal bicycle having a helper motor...."  the Patterson motorbike had no pedals.)[1] There is no cross-reference to the Title 39 definition of motor vehicle or motorcycle in N.J.S.A. 17:28-1.1. The Supreme Court has told us in Gorton v. Reliance Ins. Co., 77 N.J. 563, 572 (1978), that the term "uninsured automobile" in N.J.S.A. 17:28-1.1, mandating UM coverage, "must be read to mean the same thing as `uninsured motor *231 vehicle' in the Unsatisfied Claim and Judgment Fund Law" because the purpose of the UM Law adopted in 1968 was to reduce the drain on the Fund. We find in the Fund Law that "uninsured motor vehicle" is defined as "a motor vehicle as to which there is not in force a liability policy meeting the requirements of ... the Motor Vehicle Security-Responsibility Law." N.J.S.A. 39:6-62. No further statutory definition is available to us.
We are convinced that the Legislature did not intend that the broad Title 39 descriptive definition of a motor vehicle or cycle be incorporated into the Title 17 UM requirement. We conclude that the legislative scheme intended to include within the concept of "uninsured motor vehicle" those vehicles registered or capable of registration and which were intended to be operated or could be operated on the public highway of this State subject to the registration statute. N.J.S.A. 39:3-4.[2] Since the Patterson motor bike could not have been registered and could not physically or legally have been operated on the public highway, but was operable on private recreational property, it was not an "uninsured motor vehicle" embraced by the UM mandatory coverage, N.J.S.A. 17:28-1.1, and the Fund Law, N.J.S.A. 39:6-62. We are persuaded additionally that N.J.S.A. 17:28-1.1 does not compel a more generous reading of the concept of an uninsured motor vehicle than the policy language provides because the Legislature directed that the UM coverage be "under provisions approved by the Commissioner of Insurance." Though no specific regulations have been adopted thereunder, the Commissioner has approved the standard form used by GEICO in this case and has required no broader definition of an "uninsured automobile" than the policy actually provides. We *232 perceive that the public policy of this State is satisfied by the coverage provision of the insurance contract approved by the Commissioner which is as broad as the registration requirements in Title 39 for automobiles and motorcycles. Our decision in Laino v. Nationwide Mut. Fire Ins. Co., 169 N.J. Super. 65 (App.Div. 1979), is not to the contrary, as defendants assert; there the minibike, "a 1972 Honda Mini-trail Motorcycle," was held to be a motor vehicle designed for travel on public roads and subject to motor vehicle registration under N.J.S.A. 39:3-4, and therefore was within the motor vehicle exclusion of the Nationwide homeowner's policy.
Since the terms of the policy alone control the availability of coverage, we now consider whether the Patterson motorbike falls within the exclusionary clause of the uninsured motorist endorsement. As noted, the endorsement excludes from the UM coverage any accident involving a highway vehicle which is "a farm type tractor or other equipment designed for use principally off public roads, while not upon public roads." Defendants contend that the trial judge erred in concluding that language "or other equipment" referred to vehicles of a genus other than farm equipment. They contend that the phrase "or other equipment" means only farm-type equipment and no other. They say that since the minibike or dirtbike was not farm-type equipment, the issue must go against GEICO. We conclude to the contrary and agree with the trial judge.
In his written opinion Judge Deighan surveyed the nationally-collected cases bearing on this question, some of which are found at Widiss, A Guide to Uninsured Motorist Coverage § 2.30 at 59 (1980 & Supp.), and Annotation, "Uninsured Provision-Automobile", 65 A.L.R.3d 851, 854-856 (1979). In numerical terms, the cases are about equally divided on the point. No New Jersey case is among them.
We will discuss the cases from an historical perspective. The following cases have in similar circumstances held for coverage, although not all involved UM provisions. The oldest case is *233 Bourgon v. Farm Bureau Mut. Ins. Co., 128 Vt. 593, 270 A.2d 151 (Sup.Ct. 1970), which did not involve an uninsured motorist. There plaintiff was the administrator of the insured's estate who sought recovery of the first-party death benefit payable under the insured's automobile liability insurance policy after he was drowned when the "bush-buggy" he was driving on the frozen surface of a lake went through the ice. The company refused to pay, claiming that the bush-buggy was not an automobile as defined in the policy. The automobile definition, similar to that of a "highway vehicle" in the GEICO policy here, described an automobile as a land motor vehicle or trailer not operated on rails or crawler treads. Excluded from that definition was "a farm type tractor or other equipment designed for use principally off public roads, except while actually upon public roads." The bush-buggy was described as a stripped down Volkswagon. It had the original automobile chassis, wheels, tires, steering column and wheel, front seats, seat belts, engine and fuel tank. However, it had no lights, windshield or fenders and nothing in front of the seats except a steering column supported by a bracket. It was not registered and would not have been able to pass motor vehicle inspection requirements. It was not ordinarily operated on highways and was towed from place to place.
The court refused to construe the policy definitions narrowly holding that "there must be a substantial change in identity from a motor vehicle in the usual sense to equipment designed for use principally off public roads." Id. 270 A.2d at 152-153. Since this vehicle had originally been designed as an ordinary automobile and because its basic identity had not been changed substantially, the fact that it was not used for ordinary highway travel was not due to any basic structural alteration but to its equipment shortcomings. The court concluded that the bush-buggy was a land motor vehicle within the contemplation of the policy and found for coverage.
State Farm Mut. Auto. Ins. Co. v. Mrozek, 29 Cal. App.3d 113, 105 Cal. Rptr. 189 (D.Ct.App. 1972), involved an uninsured motorist *234 policy provision. Plaintiff, who had been sleeping in her sleeping bag in the sand dunes one-quarter mile off the highway, was struck and injured by an uninsured motorist operating a dune buggy. The definition of an uninsured motor vehicle was statutory. The statute excluded from that definition "a farm-type tractor or equipment designed for use principally off public roads, except while actually used upon public roads." Id. 105 Cal. Rptr. at 190. The trial judge found that the exception defined two types of equipment, farm-type tractors and any other type of equipment whether farm-type or not. The California District Court of Appeals disagreed:
Interpreting the phrase "farm type tractor or equipment," we hold the compound adjective "farm type" modifies both "tractor" and "equipment." There is no comma after "tractor." The phrase reasonably means farm type tractor or farm type equipment. [105 Cal. Rptr. at 191]
The District Court of Appeals reversed the finding that the insured was not covered and held that she had been struck by an uninsured motor vehicle within the meaning of the statute.
State Farm. Mut. Auto. Ins. v. Pfannebecker, 64 Ill. App.3d 582, 21 Ill.Dec. 469, 381 N.E.2d 796 (Ct.App. 1978), also involved uninsured motorists benefits and dune buggies. There plaintiff was a passenger in an uninsured dune buggy which was traveling on a baseball diamond in a city park. State Farm denied coverage under the uninsured motorist provision on the ground that the policy language excluded from coverage any "land motor vehicle designed for use principally off public roads except while being used on public roads." Id. 21 Ill.Dec. at 470, 381 N.E.2d at 797. The issue the court had to resolve was whether the dune buggy was in fact principally designed for use off public roads and therefore fell within the policy exclusion. The court decided that the evidence concerning the vehicle's design did not establish conclusively that the dune buggy was designed principally for off-road use. The dune buggy had no doors, fenders or roof, but it had not undergone any major modification of the chassis. It has a functioning speedometer, gas gauge, headlights, taillights and a horn. There was no evidence that the tires were banned from public roads and it *235 was equipped and licensed to be driven on public roads, as well as off of them. Since the evidence demonstrated that the dune buggy was capable of both on- and off-road use, the court would not conclude that its design was for use principally off public roads. Id. 21 Ill.Dec. at 470, 381 N.E.2d at 798.
Carney v. American Fire & Indemn. Co., 371 So.2d 815 (La. Sup.Ct. 1979), was an action seeking death benefits under an automobile liability insurance policy where the decedent was killed while driving a Ford Formula F race car in a racing event. The insurance company declined coverage on the ground that the race car was not an automobile as that term was defined in the policy because it fell within the exclusion of "a farm type tractor or other equipment designed for use principally off public roads, except while actually upon public roads." Id. at 816-817. The court concluded that the policy exclusion was ambiguous and applied the principle of judicial construction which affords coverage where the policy term is ambiguous. The court did not decide whether the racing car, an untitled, unlicensed, four-wheel motor vehicle with no "street" safety equipment, was an automobile within the meaning of the policy exclusion.
In Thompson v. Government Emp. Ins. Co., 122 Ariz. 18, 592 P.2d 1284 (Ct.App. 1979), the issue was whether a motorcycle, designed as a "dirt-bike," was covered by the uninsured motorist provision of the plaintiff's automobile insurance policy. The collision between plaintiff, who was riding a bicycle, and the operator of the dirtbike, took place on a vacant lot utilized for dirtbike riding. The dirtbike had no headlights, taillights, or other equipment that would make it lawful for use on public streets. It was not licensed; the operator testified that he only infrequently drove the motorcycle on city streets to get to and from dirtbike riding destinations. The policy provision excluded from the definition of uninsured automobile "a farm type tractor or equipment designed for use principally off public roads, except while actually upon public roads." Id. 592 P.2d at 1286. In holding for the insured the court quoted with approval Stepec *236 v. Farmers Ins. Co., 301 Minn. 434, 222 N.W.2d 796 (Sup.Ct. 1974), which said that the phrase "farm type" modified "equipment" as well as "tractor," but which denied UM coverage, apparently on public policy grounds, where the vehicle was a snowmobile involved in a highway accident. The Arizona court acknowledged that there were cases interpreting the same phrase to the contrary. Rather than resolving the issue of whether the dirtbike fell within the definition of an uninsured automobile policy, the court held that, given the number of differing interpretations of the same type of policy language, the policy provision was ambiguous. The court concluded that where a provision in an insurance policy is ambiguous it should be construed to provide coverage.
The most recent case reaching the "coverage" conclusion is Farmers Ins. Exchange v. Schepler, 115 Cal. App.3d 200, 171 Cal. Rptr. 230 (D.Ct.App. 1981), which postdates the trial judge's opinion in the present case. That case involved an accident in a dune buggy while it was being driven on a dirt road. The owner and operator of the dune buggy testified that he had assembled the vehicle using a Volkswagon transaxle, an engine and a kit containing tubular frame parts which he had welded together and attached to the transaxle and engine to form the basic structure of the vehicle. The owner's expressed intent was that the vehicle would be fully equipped and licensed for street use when it was completed. However, before completion he transported it by trailer to the dirt road on which the accident occurred. The owner sought coverage under his automobile liability insurance policy which defined a covered automobile as "a four wheel land motor vehicle designed for use principally upon public roads." Id. 171 Cal. Rptr. at 234. Focusing upon the phrase "designed for use principally upon public roads," the court concluded that since the owner intended that the vehicle be used for street use and since he had purchased but not yet equipped the vehicle with those items which would have made it streetworthy, the insured had a reasonable expectation that the *237 policy would cover his operation of the vehicle. Coverage was found to exist.
The following cases have held no coverage. The first was Beagle v. Automobile Club Ins. Co., 18 Ohio Op.2d 280, 176 N.E.2d 542 (C.P. 1960). That was an action seeking to recover medical payments under an automobile liability policy. The plaintiff was injured when he was struck by a wheel which flew from an automobile engaged in a race on a speedway. Medical payments were recoverable under the policy for injuries resulting from being struck by an automobile. An automobile was defined to exclude "a farm type tractor or other equipment designed for use principally off public roads, except while actually upon public roads." Id. 176 N.E.2d at 543. The insurance company declined coverage, asserting that the car was designed principally for use on race tracks and not for use on public roads; the judge agreed. He found that the vehicle fell within the policy exclusion, not because it was a farm-type tractor, but because it was other equipment designed for use principally off public roads. The court rejected plaintiff's contention that the words "other equipment" referred to farm equipment under the principle of construction known as ejusdem generis. The court held:
The rule ejusdem generis is that when general words follow an enumeration of particular cases, such general words are held to apply to cases of the same kind as those which are expressly mentioned. In the first place if the exception was just the words "a farm type tractor or other equipment" there would be some substance to this claim, but the language is not general but specifies that such equipment be designed for use principally off public roads. That, in effect is true also of farm tractors  they are designed for use principally on the farm and not on the highways. The Court feels this exception is not ambiguous and means just what it says. This auto racer was designed principally for use off the public road, and therefore is not an automobile within the meaning of the definition in the policy. [Id. 176 N.E.2d at 544.]
Williams v. Cimarron Ins. Co., 406 S.W.2d 173 (Tex.Sup.Ct. 1966), was an action to recover medical, hospital and funeral expenses under an automobile liability policy. The specific question was whether a stock car, which went out of control during a race at a track and injured and killed members of *238 plaintiff's family, fell within the definition of a covered automobile. The vehicle had originally been manufactured by Ford Motor Company but had been modified and converted into a stock car racer which was unlicensed for operation on public roads. The policy definition of automobile excluded "a farm type tractor or other equipment designed for use principally off public roads, except while actually upon public roads." Id. at 174. Plaintiff argued that the vehicle did not fall within the exclusion because it was not a farm-type tractor or other equipment similar to it. The Texas Supreme Court rejected that position, holding that the exclusion created two distinct classifications, farm-type tractor and other equipment designed for use principally off public roads. The court quoted with approval Beagle v. Automobile Club Ins. Co., supra, and adopted the Ohio court's position.
Livingston v. Nationwide Mut. Ins. Co., 295 F. Supp. 1122 (D.S.C. 1969), aff'd o.b. 419 F.2d 837 (4 Cir.1970), also found "much persuasion" in the case of Beagle v. Automobile Club Ins. Co., supra, and adopted its holding in a factually similar case. There the decedent was struck and killed by a tire which flew from a race car driven on a dirt track. The administrator of the decedent's estate sought to recover benefits under an automobile liability policy whose definition of land motor vehicle excluded "a farm type tractor, farm machinery or implements, or equipment designed principally for use off public roads." Id. at 1124. The court rejected plaintiff's theory that the phrase "equipment designed principally for use off public roads" simply modified farm type machinery and was without independent significance. Citing the Beagle case as persuasive, the district judge concluded that the race car was designed for use principally off public roads and therefore fell within the exclusionary language.
Kansas Farm Bureau Ins. Co. v. Cool, 205 Kan. 567, 471 P.2d 352 (Sup.Ct. 1970), cited as persuasive Beagle and Williams v. Cimarron Ins. Co., supra. Cool was an action seeking uninsured motorist coverage for an insured who was a passenger in a dune buggy which was involved in an accident while being driven *239 across the sand dunes of a state park. The policy provision excluded from the term uninsured automobile "a farm type tractor or equipment designed for use principally off public roads, except while actually upon public roads." Id. 471 P.2d at 356. This dune buggy had the chassis of a 3/4-ton truck and an old Chevrolet motor and truck transmission. It was unenclosed with no windshield, headlights, taillights or front fenders, no properly functioning speedometer or gas gauge. The front and rear axles had been moved forward to put all the weight on the back wheels and it was equipped with balloon tires. The dune buggy operator testified that the vehicle was not designed for, nor was it used for, operation on highways but was specifically designed and built for use on the state park sand dunes. The court concluded that, like the modified stock-car racers in Beagle and Williams, this dune buggy fell within the exclusionary clause because it was equipment designed for use principally off the public roads.
Walcott v. Hawkeye-Security Ins. Co., 189 Neb. 161, 201 N.W.2d 817 (Sup.Ct. 1972), also involved uninsured motorist coverage with the same exclusionary clause in the definition of uninsured automobile. The Nebraska Supreme Court cited Williams, Beagle, Livingston v. Nationwide Mut. Ins. Co., supra, and Kansas Farm Bureau Ins. Co. v. Cool, supra, in support of its holding that there was no coverage because the stock car was "equipment designed for use principally off public roads." Id. 201 N.W. at 818.
In Beck v. Unigard Ins. Co., 271 Or. 261, 531 P.2d 907 (Sup.Ct. 1975), appellant sought funeral expenses for the deceased insured who had been struck and killed by a race car which had left the track during a race. Citing all of the cases discussed above, the court concluded that the race car was designed for use off public roads and that the phrase in the exclusionary clause, "other equipment," did not modify or refer to "farm type tractor." Id. 531 P.2d at 908.
*240 In Autry v. Aetna Life & Cas. Ins. Co., 35 N.C. App. 628, 242 S.E.2d 172 (Ct.App.), cert. den. 295 N.C. 89, 244 S.E.2d 257 (1978), the plaintiff was injured when he was struck by a custom built three-wheel motorcycle which was being operated in his own yard. The three-wheel motorcycle was originally designed to travel on public roads but at the time of the accident it had no brakes, horn, operating lights, or license plate and it could not have passed state inspection. The question was whether the vehicle was an uninsured motor vehicle within the meaning of the policy and the state statute which was incorporated into the definition of uninsured automobile in the policy. The applicable state statute excluded from the term uninsured motor vehicle "a farm-type tractor or equipment designed for use principally off public roads, except while actually upon public streets." The court focused upon the legislative purpose of the uninsured motorist statute finding it to be the financial protection of persons injured by motor vehicles on the public highways. Since the vehicle in question was not subject to state licensing and registration and was not intended for use on public roads, it could not be considered within the contemplation of the legislature's definition of an uninsured motor vehicle. Id. 242 S.E.2d at 175-176. See, also, Horne v. Government Employees Ins. Co., 132 Ga. App. 230, 207 S.E.2d 636 (Ct.App. 1974) (motorized bathtub used in a college race on a track  coverage denied).
A few conclusions may be drawn from these cases. With respect to the nature of the particular vehicle, with the exception of the Vermont court in Bourgon v. Farm Bureau Mut. Ins. Co., supra, coverage was found to exist where the description of the vehicle or the intent of the vehicle's owner was consistent with some use upon public roads. The Vermont case may be an aberration because there the vehicle, a stripped-down Volkswagon, was not legally drivable upon public roads, nor was it intended for operation on highways. The court looked to the vehicle's original design, determined that it was then intended *241 for use on the highway and found coverage on that basis. No other case has taken that approach. Similarly, the cases which denied coverage on the basis of the description of the vehicle, ignored the original design of the vehicle and focused upon their present ability to be driven on public roads. If not so equipped, these courts concluded that the vehicle fell within the exclusionary language of the policy.
In the case before us, looking only at the physical characteristics of the motorbike involved, it is plain that it was not designed for and was never intended to be used upon public roads. Indeed, the tires of the motorbike were such as to make paved-road travel highly dangerous, if not impossible, because the spiked, deep-knobbed tires would slide the vehicle out of control. The bike had no lights, no horn and no other equipment to make it streetworthy. Thus, looking at the structure, design and use of the vehicle, it was never intended for use upon public roads. It was a motorized, recreational toy for an adolescent, not a highway vehicle.
Of course, that does not necessarily answer the question of whether the vehicle comes within the policy language which excludes, as did most all of the policies involved in the cases cited above, "a farm type tractor or other equipment designed for use principally off public roads, while not upon public roads." Those cases finding coverage, regardless of the vehicle's design or intended use, did so by interpreting the exclusionary provision to refer solely to farm-type equipment or by finding ambiguity. The courts in State Farm Mut. Auto, Ins. Co. v. Mrozek, Thompson v. Government Emp. Ins. Co., and Stepec v. Farmers Ins. Co., all supra, all agreed that the words "farm type" modified both "equipment" and "tractor." However, there is an important difference between the policy phraseology in those cases which found coverage and in most of those which concluded that two classifications existed in the exclusion. In those cases finding coverage, the exclusionary language was "a farm type *242 tractor or equipment." In most of those cases where coverage was denied the phraseology was "a farm type tractor or other equipment."[3] The insertion of the word "other" was sufficiently persuasive for those courts to conclude that the policy draftsperson or the enacting legislature intended that the words "equipment designed for use off public roads" referred to equipment "other" than a farm-type tractor.
In the present case the word "other" does modify equipment in the exclusion. Thus the present clause is unlike those cases finding coverage by limiting the exclusionary language to farm-type equipment. We agree with the analysis in the cases which conclude that there are two classifications of excluded vehicles where the phraseology is "a farm type tractor or other equipment designed for use principally off public roads, while not upon public roads." Farm-type tractors and equipment of that genus are normally not used principally on public roads. Consequently it is redundant to include that phrase in the exclusion if "other equipment" also refers to farm-type equipment only. We conclude that the use of the modifying phrase "designed for use principally off public roads" after "other equipment" was designed to include a category of vehicle separate and distinct from "farm type tractors."
Whether one focuses upon the nature, description or design of the vehicle or upon the exclusionary language in the policy, the result is the same. We hold that the Patterson dirtbike or minibike was clearly not designed or intended for use on public roads, was not an "uninsured highway vehicle," and was excluded from coverage under the UM endorsement.
The judgment of the Chancery Division is affirmed.
NOTES
[1] "Motorcycle" is defined in N.J.S.A. 39:1-1 as including "motorcycles, motor bikes, bicycles with motor attached and all motor operated vehicles of the bicycle or tricycle type ... whether the motive power be a part thereof or attached thereto, and having a saddle or seat with driver sitting astride or upon it, or a platform on which the driver stands."
[2] "Except as hereinafter provided, every resident of this State and every nonresident whose automobile or motorcycle shall be driven in this State shall before using such vehicles on the public highways, register the same, and no automobile or motorcycle shall be driven unless so registered." N.J.S.A. 39:3-4.
[3] There are three exceptions: Livingston v. Nationwide Mut. Ins. Co., supra, 295 F. Supp. 1122; Kansas Farm Bureau Ins. Co. v. Cool, supra, 205 Kan. 567, 471 P.2d 352 and Walcott v. Hawkeye-Security Ins. Co., supra, 189 Neb. 161, 201 N.W.2d 817.