**SENTRY INSURANCE CO.**

v.

**G. Karen CASTILLO et al.**

**No. 89-23-Appeal.**

Supreme Court of Rhode Island.

May 4, 1990.

Paul K. Sprague, Cobleigh, Sprague & Gicobbe, Warwick, for plaintiff.

Charles P. Cavas, William A. Poore, Hodosh, Spinella & Angelone, Providence, for defendants.

## OPINION

MURRAY, Justice.

This declaratory judgment action came before the court on the appeal of the plaintiff Sentry Insurance Company (Sentry) from a Superior Court judgment. The trial justice determined that the defendant G. Karen Castillo (Castillo) was entitled to recover on the uninsured-motorist section of her insurance policy for injuries sustained when she was hit by a snowmobile on a private athletic field. We find that the snowmobile accident is covered by the defendant's uninsured-motorist insurance policy. Moreover, we hold that an insurance-policy provision restricting coverage for accidents involving snowmobiles is contrary to the uninsured motorist statute, G.L.1956 (1979 Reenactment) § 27-7-2.1, as amended by P.L.1981, ch. 251, § 2, and public policy. We therefore affirm the trial justice's declaratory judgment.

The facts surrounding the accident are undisputed. On January 16, 1983, defendant Castillo went sledding with some friends at the Cranston West High School athletic field. While at the athletic field she was struck by a snowmobile negligently operated by Robert M. Cornell (Cornell). As a result Castillo suffered injuries to her right knee. The snowmobile was operating illegally; the field on which the accident occurred was not designated for snowmobile use. Castillo agrees that "the accident and injury occurred at a location other than a public road or highway."

Cornell was uninsured at the time of the accident. Castillo sought benefits under the uninsured-motorist provision of her insurance policy and filed a civil action against plaintiff in this case and Cornell. The plaintiff then filed a complaint for declaratory judgment in Providence County Superior Court against defendants Castillo and Cornell on November 24, 1986, asking the court to conclude that Castillo was not entitled to recover on her uninsured-motorist policy.

The trial justice entered a judgment in favor of defendant Castillo on January 10, 1989, holding that she was entitled to coverage under the uninsured-motorist policy.

The trial justice noted that the uninsured-motorist statute mandates coverage for the protection of persons who are legally entitled to recover damages from owners or operators of uninsured-motor vehicles. The trial justice reasoned that a snowmobile is one of those motor vehicles for which the Legislature intended to provide coverage since a snowmobile is a motor vehicle that "may be driven on most of the public roads of this state under certain conditions."

■ The first issue we address is whether the accident is excluded from the uninsured-motorist provision of defendant's insurance policy. The insurance policy in this case contains a provision for uninsured motorist insurance, which states:

"We promise to pay the damages you're legally entitled to receive from the owner or operator of an uninsured motor vehicle because of bodily injury. We'll pay these damages for bodily injury you suffer in a car accident while occupying a car or, as a pedestrian, as a result of having been struck by an uninsured motor vehicle."

The policy also defines "motor vehicle" as "a land motor vehicle *designed for use on public roads*. It includes cars and trailers. It also includes any other land motor vehicle *while used on public roads*." (Emphasis added.) According to the policy, a snowmobile collision would be covered if the snowmobile was "designed for use on public roads" or if the accident occurred "while [the vehicle was being] used on public roads." This snowmobile accident occurred on a private athletic field and therefore fails to qualify the accident as one involving a motor vehicle that was being used on a public road.

Somewhat surprisingly, however, plaintiff contemplates coverage in an additional situation. If Castillo "had been struck or injured by the snowmobile during its use upon a public road or DEM [Department of Environmental Management] designated area, then she would be protected by [the] policy." According to plaintiff, therefore, coverage would be provided even if a snowmobile were not designed for use on public

roads and even if the accident did not occur on a public road so long as the accident occurred in a DEM-designated area. The plaintiff argues that because the use of a snowmobile on a private athletic field is illegal, the Legislature could not have contemplated coverage if such an accident were to occur. We believe that the Legislature usually contemplates violations of the law in drafting legislation. Even the uninsured-motorist statute contemplates violation of the law by allowing coverage for victims of hit-and-run drivers. Any person who knowingly fails to stop at the scene of an accident is punishable by up to five years in prison. G.L.1956 (1982 Reenactment) § 31-26-1. For the purposes of deciding whether to require coverage, therefore, we see no distinction between off-road use on a private athletic field not designed for snowmobile use and off-road use in a DEM-designated area.

The question remains, therefore, whether a snowmobile is "a land motor vehicle designed for use on public roads." General Laws 1956 (1982 Reenactment) § 31-3.2-1(3) defines a snowmobile as "a motor vehicle designed to travel over ice or snow supported in whole or in part by skis, belts, cleats, or low pressure tires." This statute makes no reference to the use or nonuse of snowmobiles on public roads, but it does describe a snowmobile as a "motor vehicle." The fact that a snowmobile is "designed to travel over ice or snow" has no bearing on the issue of its design for use on public roads. The fact that snowmobiles are designed for use on ice and snow does not mean that they are not designed as well for use on public roads.

A further analysis of the statutes relating to snowmobiles reveals that the use of snowmobiles on highways is specifically contemplated in § 31-3.2-6(2), which provides, "The assistant director for motor vehicles may adopt rules and regulations * * * regulating the use of snowmobiles and recreational vehicles on streets and highways." Furthermore, § 31-3.2-7, which addresses the operation of snowmobiles, describes conditions for the use of snowmobiles on highways. Section 31-3.2–

7(1)(a) explains that snowmobiles operating on highways must not be operated within the right of way. Section 31–3.2–7(1)(b) states, "A snowmobile or recreational vehicle may make a direct crossing of a street or highway *at any hour of the day* * * *." (Emphasis added.) This statute also allows the operation of snowmobiles upon the public streets and highways during emergencies and in any international contest. Section 31–3.2–7(1)(d). In light of these rules relating to the use of snowmobiles on public roads, it is difficult to conclude that snowmobiles are not designed for use on public roads.

We have had an opportunity in the past to consider a similar policy exclusion. In *Lally v. Automobile Mutual Insurance Co. of America*, 114 R.I. 582, 337 A.2d 243 (1975), the plaintiff was struck by a go-cart while she was walking on a sidewalk in Cranston. The uninsured-motorist provision of the policy excluded coverage for injuries caused by equipment designed for use principally off public roads unless, at the time of the accident, the ordinarily excluded vehicle was operating on a public road. In contrast to the instant case, a go-cart was not specifically defined as a "motor vehicle." The court noted that a go-cart could not be operated on a public road as it "lacked lights, directional signals, a rearview mirror, a horn, and a proper breaking system." *Id.* at 584, 337 A.2d at 245. We therefore see no inconsistency between *Lally* and our holding here today.

Even if the insurance policy were carefully worded to exclude coverage, we hold that an insurance-policy provision disallowing coverage for accidents involving snowmobiles violates the Rhode Island Uninsured Motorist Statute, G.L.1956 (1979 Reenactment) § 27–7–2.1, as amended by P.L.1981, ch. 251, § 2. We have in the past found provisions of insurance policies that restrict coverage afforded by the statute void as a matter of public policy. *Aldcroft v. Fidelity and Casualty Co.*, 106 R.I. 311, 319–20, 259 A.2d 408, 414 (1969). Section 27–7–2.1 provides in pertinent part:

> "Uninsured motorist coverage.—No policy insuring against loss resulting from liability imposed by law for property damage caused by collision, bodily injury or death *suffered by any person arising out of the ownership, maintenance or use of a motor vehicle* shall be delivered or issued for delivery in this state *with respect to any motor vehicle registered or principally garaged in this state* unless coverage is provided therein or supplemental thereto * * * for the protection of persons insured thereunder *who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and hit-and-run motor vehicles* because of property damage, bodily injury, sickness or disease, including death, resulting therefrom * * *." (Emphasis added.)

Although some states have explicitly expressed the legislative intent behind their uninsured-motorist statutes, our statute is devoid of legislative history. We have consistently held that if the intention of a statute is unclear, "we must attempt herein to ascertain the legislative intention from a consideration of the legislation in its entirety, viewing the language used therein in the light, nature and purpose of the enactment thereof." *Narragansett Electric Co. v. Harsch*, 117 R.I. 395, 402, 368 A.2d 1194, 1199 (1977) (citing *Mason v. Bowerman Bros.*, 95 R.I. 425, 431, 187 A.2d 772, 776 (1963)).

In interpreting statutes, this court gives their wording its plain and ordinary meaning. *Telephone Credit Union of Rhode Island v. Fetela*, 569 A.2d 1059, 1061 (R.I. 1990). In analyzing the statute, we see no intent to limit uninsured coverage to accidents occurring on public roads. The statute specifically provides coverage for "any person," including pedestrians. Moreover, the statute does not limit recovery to damages arising out of the "use" of motor vehicles only. Liability with respect to a motor vehicle may also arise "out of the ownership, [or] maintenance" of the motor vehicle. This wording implies that such motor vehicles need not be in operation but may cause injury while undergoing repair on private property. *See Cocking v. State Farm Mutual Automobile Insurance Co.*,

6 Cal.App.3d 965, 86 Cal.Rptr. 193 (1970) (coverage was allowed when individual was injured while putting chains on an uninsured automobile). The word "maintenance" belies plaintiff's argument that an accident involving a motor vehicle, such as a snowmobile, must occur on a public road.

A further review of the statutory language reveals that the term "motor vehicle" is used in the uninsured-motorist statute rather than the word "automobile," which is often the word used in other states' statutes. *E.g., Thompson v. Government Employees Insurance Co.,* 122 Ariz. 18, 592 P.2d 1284 (1979). This deliberate use of the word "motor vehicle," combined with the definition of snowmobile as a motor vehicle, seems inconsistent with the view that only snowmobile accidents occurring on the highway or public roads are covered. In fact, the only reference in the legislation to highways is in the definition of "vehicle," which is broadly defined:

"Every device in, upon or by which any person or property is *or may be transported or drawn upon a highway,* excepting devices used exclusively upon stationary rails or tracks." (Emphasis added.) Section 31–1–3(a).

The broad language of this statute in no way limits coverage for snowmobiles because a snowmobile "may be transported or drawn upon a highway" in circumstances earlier described.

A review of the legislation in its entirety reveals an intent to treat snowmobiles like other motor vehicles. A snowmobile must be registered in the state. Section 31–3.2–2. Drivers must be licensed, and there are laws restricting the use of snowmobiles by minors. Section 31–3.2–9. Moreover, a statute regulates the necessary equipment of snowmobiles to ensure that they meet specific standards. Section 31–3.2–10. *See Government Employees' Insurance Co. v. Daniels,* 180 N.J. Super. 227, 434 A.2d 648 (1981) (a motorbike, which could not have been registered and could not physically or legally have been operated on public highway, was not an "uninsured motor vehicle" embraced by statute providing for mandatory uninsured-motorist coverage).

We find that those courts that have upheld the validity of the policy exclusion have done so under conditions that are distinguishable from the situation at bar. In *Stepec v. Farmers Insurance Exchange,* 301 Minn. 434, 222 N.W.2d 796 (1974), the court ruled that a snowmobile is not a motor vehicle within the meaning of the uninsured-motorist statute. In Minnesota motor vehicles have been statutorily defined as vehicles designed for use on highways whereas snowmobiles have been defined as vehicles designed for travel on snow and ice. In contrast, in Rhode Island a snowmobile is specifically defined as a "motor vehicle."

In *Schuster v. Allstate Insurance Co.,* 146 Mich. App. 578, 381 N.W.2d 773 (1985), the court rejected coverage for an accident involving a snowmobile because the snowmobile did not fall within the definition of "motor vehicle" that required that the vehicle have " 'more than 2 wheels.' " *Id.* at 582, 381 N.W.2d at 775. The court noted, however, that before the statute had been redrafted to narrow the definition of motor vehicle, under the new no-fault laws, the same court allowed coverage for snowmobiles because they fell within the definition of being "self-propelled." *Id.* at 581, 381 N.W.2d at 774–5 (citing *Rooney v. Detroit Aide Inter–Ins. Exchange,* 94 Mich.App. 448, 288 N.W.2d 445 (1980)). *See also Carguillo v. State Farm Mutual Automobile Insurance Co.,* 529 So.2d 276, 278 (Fla. 1988) (the court found that an off-road motorcycle accident was excluded from coverage under the uninsured-motorist statute because the vehicle involved was not a "motor vehicle"); *Berry v. Motorists Mutual Insurance Co.,* 13 Ohio App.3d 228, 468 N.E.2d 922 (1983) (the applicable statutory definition of "motor vehicle" made an exception for "equipment used in construction work," which the court found specifically excluded from coverage for an accident involving a backhoe).

Similarly, in the case *Gallo v. J.C. Penney Casualty Insurance Co.,* 328 Pa.Super. 267, 476 A.2d 1322 (1984), the court upheld the exclusion. The *Gallo* case is distinguishable because the court based its

ruling on the express policy of the Pennsylvania uninsured-motorist statute: "'[T]he transportation of individuals by motor vehicle over Commonwealth highways and other highways significantly affects interstate commerce.'" Id. at 276 n.6, 476 A.2d at 1327 n.6. This language served to support a finding of legislative intent to provide coverage only for accidents occurring on public roads.

In our view the legislation in its entirety reveals an intent to make the uninsured-motorist statute provide protection to an insured and to afford him or her this protection without the insureds' having to rely on compulsory insurance. This serves as one explanation of why Rhode Island has omitted compulsory insurance from its statutory scheme. Opponents to compulsory insurance have asserted that the purpose of uninsured-motorist coverage is to ensure that we are able to protect ourselves. They argue that a compulsory insurance system "could not guarantee us the protection against an uninsured motorist which the present system of voluntary insurance affords." Alliance of American Insurers, Address to the Senate Committee on Corporations (Jan. 22, 1985). We must fulfill this legislative objective and allow the uninsured-motorist statute the opportunity to protect those who fall within its plain and ordinary meaning and have no other means of recourse. See Richards v. Mountain States Mutual Casualty Co., 104 N.M. 47, 716 P.2d 238 (1986) (the court determined that the object of the similarly worded uninsured-motorist statute "is to compensate those persons injured through no fault of their own").

For the reasons stated herein, the plaintiff's appeal from the Superior Court's declaratory judgment is denied and dismissed. The declaratory judgment allowing the defendant coverage is hereby affirmed.

SHEA, J., dissenting.

I respectfully dissent. There is precedent in the law of this state for upholding the validity of the type of policy exclusion in question. Such an exclusion, in my opinion, does not violate the uninsured-motorist statute, so called.

I do not believe that the public policy in this state is as it is stated by the majority. Rather, that policy was expressed by this court as follows: "In enacting [the Uninsured Motorist Statute G.L.1956 (1979 Reenactment) § 27–7–2.1], the legislature intended that, as a matter of public policy, protection should be given to the named insured in such policies against economic loss resulting from injuries sustained by reason of the negligent operation of uninsured motor vehicles or hit-and-run motor vehicles." Aldcroft v. Fidelity & Casualty Company of New York, 106 R.I. 311, 318, 259 A.2d 408, 413 (1969). The court in that opinion went on to state that it was the Legislature's intent that such protection be afforded to an insured motorist operating on the public way. Id. at 318–19, 259 A.2d at 414.

In Lally v. Automobile Mutual Insurance Co. of America, 114 R.I. 582, 337 A.2d 243 (1975), decided six years after Aldcroft, we considered an exclusion similar to the one before us. In that case the plaintiff was injured when she was struck by a go-cart while walking on the sidewalk. After determining that the sidewalk was not part of the public highway, we upheld the exclusion and the denial of coverage. The fact that the vehicle in Lally was a go-cart, rather than a snowmobile, is in my opinion of no consequence. In Lally our court adhered to the legislative intent set forth in Aldcroft, that is, to grant uninsured-motorist coverage only to those injured on the public roads.

It is well settled that the language used in an insurance policy "must be given its plain, ordinary and usual meaning." Malo v. Aetna Casualty and Surety Co., 459 A.2d 954, 956 (R.I.1983). "Liability insurance is generally written for a specific hazard in order to enable the underwriter to calculate premiums on some equitable as well as predictable basis. As a result, the hazard to be covered under each policy is carefully defined and other hazards are excluded." 7A Appleman, Insurance Law and Practice § 4500.04 (Berdal ed. 1979).

"Snowmobile" is defined in G.L.1956 (1982 Reenactment) § 31–3.2–1(3) as "a motor vehicle designed to travel over ice or snow supported in whole or in part by skies, belts, cleats, or low pressure tires." In addition, § 31–3.2–7(1)(a) provides that snowmobiles shall not be operated "upon the roadway shoulder or inside bank or slope on any highway in this state or elsewhere within the right of way" except that snowmobiles may make direct 90–degree crossings of streets or highways, § 31–3.2–7(b). They also may be operated on public streets or highways in an emergency when snow upon the highway renders travel by automobile impractical. Section 31–3.2–7(d).

Under the terms of the policy and these definitions, a snowmobile is not a vehicle designed for use on a public road. This incident should not be covered under the uninsured-motorist portion of the policy. If this injury occurred on a public road, the policy definition of motor vehicles would encompass this accident.

I subscribe to the thinking that uninsured-motorist statutes are intended to encompass accidents involving motor vehicles and occurring on the public roads. Thus snowmobiles should be included under uninsured-motorist coverage only when they are being used on the road. 2 *No–Fault and Uninsured Motorist Automobile Insurance* § 24.30[12][vi] at 24–147 (Matthew Bender 1988).

For these reasons I would vacate the judgment appealed from and remand the case for entry of judgment for the plaintiff.