James E. O'NEIL, Attorney General of the State of Rhode Island

v.

INTERSTATE NAVIGATION COMPANY et al.

TOWN OF NEW SHOREHAM

v.

INTERSTATE NAVIGATION COMPANY et al.

Nos. 89–185–M.P., 89–190–M.P.

Supreme Court of Rhode Island.

Nov. 8, 1989.

James E. O'Neil, Atty. Gen., Sheldon Whitehouse, Asst. Atty. Gen., Dorothy Fobert, Sp. Asst. Atty. Gen., Donald J. Packer, Packer & O'Keefe, Peace Dale, for plaintiff.

Michael McElroy, Katherine Merolla, Asquith, Merolla, Anderson, Ryan & Wiley, Providence, for defendants.

## OPINION

MURRAY, Justice.

This consolidated case is before the court on petitions for certiorari filed by the town of New Shoreham and James E. O'Neil, Attorney General of the State of Rhode Island. The petitioners seek a review from an order of the Public Utilities Commission (commission), which dismissed Interstate Navigation Company's application for rate change and its motion for interim relief. The commission premised its dismissal upon its concept that it lacked subject-matter jurisdiction. We vacate the decision of the Public Utilities Commission and remand the case to the commission for further proceedings.

Interstate Navigation Company (Interstate) provides ferry service for passengers, vehicles, and freight to Block Island. On March 22, 1989, Interstate filed a rate-change application and a motion for interim relief with the commission. On May 1, 1989, the commission issued an order dismissing the action after a majority of its members declined to act because they were of the opinion that the commission lacked subject-matter jurisdiction. Two of the commission members decided that the Division of Public Utilities and Carriers (division) had jurisdiction to hear the case. One commissioner dissented, concluding that the commission itself had exclusive jurisdiction over Interstate's rate-change application.

Thereafter the town of New Shoreham and Attorney General James E. O'Neil each filed petitions for writ of certiorari, seeking review of the commission's order. This court issued the requested writs and, upon motion, granted consolidation of the two cross petitions into this review proceeding.

In determining which governmental agency has jurisdiction to hear Interstate's rate-change application, we first look to G.L.1956 (1984 Reenactment) § 39-1-3, which established the commission and the division and defined their respective functions. Section 39-1-3 provides in pertinent part:

"The commission shall serve as a quasi-judicial tribunal with jurisdiction, powers, and duties to hold investigations and hearings involving the rates, tariffs, tolls and charges and the sufficiency and reasonableness of facilities and accommodations of railroad, gas, electric, water, telephone, telegraph and pipeline public utilities * * *. The administrator shall exercise the jurisdiction, supervision, powers and duties not specifically assigned to the commission."

Section 39-1-3 establishes two separate agencies, the commission and the division. The Legislature intended to "segregate the judicial and administrative attributes of ratemaking and utilities regulation and to vest them separately and respectively in the commission and the administrator (or division)." *Narragansett Electric Co. v. Harsch*, 117 R.I. 395, 402, 368 A.2d 1194, 1199 (1977). The commission is to function as a quasi-judicial tribunal. It has the power to hold hearings and to "sit as an impartial, independent body * * * charged with the duty of rendering independent decisions affecting the public interest and pri-

vate rights based upon the law and upon the evidence presented before it by the division and by the parties in interest." Section 39–1–11.

The division's powers include the "effective administration, supervision and regulation of public utilities, communications carriers, and common or contract carriers * * *." Section 39–1–15. In addition, the division assumes a role similar to that of a party in interest in hearings before the commission. At these hearings the division presents evidence and makes arguments on behalf of the public. *Narragansett Electric Co.*, 117 R.I. at 404, 368 A.2d at 1200. *See Providence Gas Co. v. Burke*, 419 A.2d 263 (R.I.1980).

· A majority of the commission found that § 39–1–3 does not specifically grant the commission jurisdiction over rate-change applications of ferries. Therefore, the division has the residual jurisdictional authority to hear the case. Since the language of § 39–1–3 does not specifically state which agency shall have jurisdiction over rate-change applications of ferries, "we must attempt herein to ascertain the legislative intention from a consideration of the legislation in its entirety, viewing the language used therein in the light, nature and purpose of the enactment thereof." *Narragansett Electric Co.*, 117 R.I. at 402, 368 A.2d at 1199 (citing *Mason v. Bowerman Bros.*, 95 R.I. 425, 431, 187 A.2d 772, 776 (1963)). Also, "[t]his court must assume that the Legislature intended that statutes relating to the same subject matter be construed together to be consistent and to effectuate the policy of the law." *State v. Jordan*, 528 A.2d 731, 734 (R.I.1987).

■ The ambiguity in § 39–1–3 can be clarified when read together with other sections of the statute. Interstate, a ferry company, is engaged in the water transportation of persons, vehicles, and freight to New Shoreham, Rhode Island. Interstate is a common carrier as defined by § 39–1–2(8),[1] which defines a common carrier as all carriers for hire or compensation, including ferry companies. According to § 39–1–2(7),[2] Interstate would be classified as a public utility by virtue of its being a common carrier.

■ In *Town of New Shoreham v. Rhode Island Public Utilities Commission*, 464 A.2d 730, 737 n. 5 (R.I.1983), we stated that "the commission has exclusive jurisdiction to determine the rates of public utilities." Further, pursuant to G.L.1956 (1984 Reenactment) § 39–3–11, as amended by P.L.1986, ch. 504, § 2, the commission has the jurisdiction to review rate-change applications of public utilities, to hold hearings and investigations, and to issue orders pertaining to these rate-change applications. Section 39–3–11 illustrates the Legislature's intention to reserve rate-making authority over public utilities to the quasi-judicial commission.

The commission relied on the certificate requirement imposed on water carriers by § 39–3–3 in determining that the division had jurisdiction to hear Interstate's rate-change application. Section 39–3–3 requires water carriers to obtain a certificate of public convenience and necessity from the division prior to commencing business within the state. Section 39–3–3's certificate requirement is not applicable to the determination of rates of water carriers. The issuance of certificates of public convenience and necessity to utilities is an administrative function reserved to the division. The determination of rates of water carri-

---

1. General Laws 1956 (1984 Reenactment) § 39–1–2(8) provides:

    " 'Common carrier' except when used in chapters 12, 13, and 14 of this title means and includes all carriers for hire or compensation including railroads, street railways, express, freight and freight line companies, dining car companies, steam boat, motorboat, power boat, hydrofoil, and ferry companies and all other companies operating any agency or facility for public use in this conveyance over fixed routes, or between fixed termini within this state or persons or property by or by a combination of land, air or water."

2. Section 39–1–2(7) provides in part:

    " 'Public utility' means and includes every company operating or doing business in intrastate commerce and in this state as a railroad, street railway, common carrier, gas, liquefied natural gas, electric, water, telephone, telegraph and pipeline company * * *."

ers is a quasi-judicial function reserved to the commission.

Further, the commission interpreted specific legislative grants of rate-making power to the division over certain common carriers to extend to *all* common carriers including ferries. The Legislature delegated some of the commission's rate-making authority to the division. These include rate-making power over air carriers (G.L. 1956 (1984 Reenactment) chapter 11 of title 39), motor carriers of property (chapter 12 of title 39), motor passenger carriers (chapter 13 of title 39), and taxi cabs and limited public motor vehicles (chapter 14 of title 39). This delegation of rate-making authority is not absolute; it is limited to those specifically enumerated by the Legislature. Had the Legislature intended to delegate rate-making authority over ferries to the division, it would have done so in a similar manner.

The Legislature declared the policy and purpose of title 39 in § 39–1–1. It is the policy of the state to provide fair regulation of public utilities and carriers in the interest of the public. An additional policy is to promote availability of adequate, efficient, and economical energy, communication, transportation, and water supplies at reasonable rates. Section 39–1–1. The public interest is best served by granting the commission jurisdiction over rate-change applications of Interstate. Interstate provides ferry service to Block Island. At certain times of the year, it is the sole means of transportation to Block Island. Prompt determination and appellate review of Interstate's rate-change application is vital to the residents of Block Island.

Hence it is the opinion of this court that the legislative scheme inherent in § 39–5–1 providing for judicial review through a writ of certiorari seeks to address efficient transportation and provide a vehicle by which the commission's rate decisions are expeditiously decided by this court rather than leave such matters of appeal from the division's rate decisions to a more circuitous route through the Superior Court.

Finally, in 1983 the commission decided Interstate's previous rate-change application. The commission held hearings and investigations. The division opposed the rate increase and presented evidence to the commission. *Interstate Navigation Co. v. Burke,* 465 A.2d 750 (R.I.1983). We see no justification to shift jurisdiction to the division for Interstate's subsequent rate-change applications.

Accordingly we hold that the commission erred in dismissing Interstate's rate-change application for lack of subject-matter jurisdiction. We conclude upon this analysis that the commission shall entertain jurisdiction to hear rate-change applications of ferries, including Interstate.

The petitions for certiorari are granted, and the decision of the Public Utilities Commission is vacated. We remand the case to the commission for further proceedings.